AMELIA HAGAN, Exrx.

*v.*

MARY H. WALDO.

*Opinion re-filed November 1, 1897.*

</div>

1. DURESS—*what necessary to set aside deed on the ground of duress.* To justify the setting aside of a deed on the ground of duress, the grantor must, at the time of its execution, have been in such fear of life or bodily harm in case of refusal as to have so affected his mind that the execution of the deed was not his voluntary act.

2. DEEDS—*a deed cannot be impeached by grantor's subsequent declarations.* A deed duly executed and delivered cannot be impeached by the subsequent declarations of the grantor.

3. SAME—*vexation and annoyance not ground for setting aside deed.* Mere vexation and annoyance of the grantor, caused by quarreling in the family, are not ground for setting aside a deed, unless such vexation and annoyance have produced in the grantor a temporary state of insanity, which existed when the deed was executed.

4. SAME—*when title cannot be divested by grantor's subsequent deed.* Title acquired under a deed duly executed and delivered, passing a life estate to the grantee with remainder in fee to her children, the grantors retaining a life estate, is not divested by the subsequent acts of the grantors in dividing the property and conveying the parcels to each other, respectively.

5. EVIDENCE—*grantor's testimony cannot impeach certificate of acknowledgment.* Testimony of a grantor that a deed was executed under duress is not of itself sufficient to impeach the certificate of an officer authorized by law to take acknowledgments, showing that the deed had been executed and acknowledged according to law.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. EDWARD P. VAIL, Judge, presiding

J. L. RAY, for plaintiff in error.

CREA & EWING, and GERE & PHILBRICK, for defendant in error

Mr. JUSTICE CRAIG delivered the opinion of the court:

This bill in equity was originally brought by Victorine Bongard to set aside a certain deed executed by the complainant and her husband, Joseph Bongard, May 31, 1884, by which they conveyed four hundred and twenty-five acres of land in Champaign county to Mary H. Waldo for the term of her natural life, and to her heirs, Frances Waldo, Maud Waldo and Harry Waldo in fee simple, subject to a life estate in Victorine Bongard, and if Joseph Bongard survived her, the life estate in him, retained by the grantors, respectively, during the terms of their lives. After the suit was begun the original complainant, Victorine Bongard, departed this life, and subsequently her death was suggested, and her executrix, Amelia Hagan, was allowed to become a party complainant. The land was described as follows: The north half of section 19, township 17, north, range 10, east of the third principal meridian; also the south half of the south-east quarter of section 18, and the south twenty-two acres of the south-west quarter of the south-west quarter of section 18, and three and one-quarter acres off of the south side of the south-east quarter of the south-west quarter of section 18, all in the township and range aforesaid.

The deed was properly executed by the grantors and acknowledged before a notary public on the day it bore date, and was placed on record in the county where the land was located. The grantee Mary H. Waldo was a daughter, and the grantees Frances, Maud and Harry were grandchildren, of the grantors. The lands, at the time of the conveyance, were owned by Victorine Bongard in her own right. After the conveyance the grantors continued to reside on the lands as husband and wife until

the fall of 1884, when the complainant left her husband and went to reside with her daughter Amelia Hagan. At the time the deed was executed Mary Waldo and Amelia Hagan were the only children of the grantors. The complainant contended that she executed the deed under duress, and upon this ground it should be set aside.

The bill contains the following allegation, viz.: "She further represents, that prior to that time, on or about the 31st day of May, 1884, the said Joseph Bongard, by threats, violence and abuse of your oratrix, the said Mary Waldo joining with her persuasions, misrepresentations, falsehoods and deceits, and after persuading and threatening your oratrix in various ways, and Bongard having threatened the life of your oratrix, compelled oratrix to make and deliver to said Mary Waldo and her three children" the deed for the lands involved.

Much evidence was introduced on the hearing by the complainant for the purpose of showing coercion and duress when the deed in question was executed. Much of the offered evidence was incompetent, and that was no doubt rejected by the chancellor on the hearing.

It is a familiar rule that a deed duly executed and delivered cannot be impeached by the subsequent declarations of the grantors, and yet much reliance seems to have been placed on the declarations of the grantors in this case. Bongard and his wife were French. They were both of a quarrelsome disposition, and, as appears from the evidence, they were for many years engaged in disputes and quarrels over various matters. At one time they would be in a bitter quarrel with one daughter, and in a short time peace would be declared and then a row would be started with the other daughter. Which one was to blame for the troubles which kept the domestic relations of the Bongard family in a constant turmoil it is somewhat difficult to determine from the evidence. Some of the neighbors think the old man was the cause of the disturbance, while, on the other hand, others equally

reliable and credible think the blame should be placed at the old lady's door. But however this may be, these quarrels and family disturbances cannot be regarded sufficient ground for setting aside the deed. Conceding that Bongard and his wife lived in a quarrel for forty years, that fact would not vitiate the deed. Unless the wife, at the time of executing the deed, was under actual duress and the deed was not her act, it must be sustained. If, at the time the deed was executed, the complainant was under such coercion and restraint that her mind was paralyzed from fear of her life or great bodily harm if she refused to execute the deed, and under such coercion the deed was executed, then it could not be regarded as her act. But as was said in *Brower* v. *Callender*, 105 Ill. 88, mere vexation and annoyance are not sufficient to set aside a deed, unless it be shown that the mind was in that condition that by reason of such vexation and annoyance a state of insanity was produced, and existed when the deed was executed and acknowledged.

As has been seen, the deed was executed on the 31st day of May, 1884. At this time Joseph Bongard and Victorine Bongard, his wife, and Mary Waldo, the daughter, resided on the farm, (the land in question,) some twenty-two miles from Champaign. The three parties started from the farm in a buggy, and drove to Champaign for the purpose of executing the deed. When they arrived in Champaign they stopped at the residence of Philip McDonald, an acquaintance. They told McDonald what they had come to Champaign to do. The complainant, Victorine Bongard, as shown by the evidence of all the parties, was pleasant, talked, laughed and was sociable. After talking with McDonald and his family the three parties proceeded to the office of Thomas A. Reed. He drew the deed, and it was signed and acknowledged before Smith, a notary public in Reed's office. Then the parties returned to McDonald's, talked with him again and invited him to visit them. The complainant talked,

laughed and was exceedingly sociable. They then left McDonald's house and returned home in the buggy, as they had come. It is apparent from the evidence of Mary Waldo and the McDonalds that complainant was under no restraint or duress when the deed was executed, but, on the other hand, the execution of the deed was her free and voluntary act. It is true, the complainant herself testified that she was acting under duress when she executed the deed, but that was not sufficient to impeach the deed. Where a deed has been acknowledged, and contains the certificate of an officer authorized by law to take an acknowledgment, the certificate of the officer showing that the deed was executed and acknowledged by the grantor cannot be overcome or impeached by the testimony of the grantor alone. *Blackman* v. *Hawks*, 89 Ill. 512; *Heacock* v. *Lubuke*, 107 id. 396; *Dickerson* v. *Evans*, 84 id. 451.

In the spring of 1885 Victorine Bongard filed a bill for divorce against her husband, Joseph Bongard. A divorce was granted, and two persons were selected by the parties as arbitrators to make a division of property between them. These arbitrators decided that Joseph Bongard should have the north-east quarter of section 19 and the south half of the south-east quarter of section 18,—three eighties, or two hundred and forty acres of land; and that Victorine Bongard should have the north-west quarter of section 19, and twenty-eight or twenty-nine acres off the south side of the south half of the south-west quarter of section 18, which they called the one hundred and ninety acres. Under this arrangement made by the arbitrators Mrs. Bongard conveyed to her husband the land set apart to him and he conveyed to Mrs. Bongard the land set apart to her. It is claimed in the argument, as we understand counsel, that this action of the parties dividing the lands virtually nullified the deed of May 31, 1884. Under the deed of May 31, 1884, the title to the lands named therein passed to Mary Waldo and her children named in the deed, and no act, conduct or agree-

ment of Joseph Bongard and his wife in regard to the lands could divest them of that title. The conveyances from Joseph Bongard to his wife, and from her to him, could only operate upon the life estate reserved to them under the deed of May 31, 1884.

It may be that the deed of May 31, 1884, was an unwise act on the part of Mrs. Bongard,—an act that did injustice to her other daughter; but that fact constitutes no ground for setting the deed aside in a court of equity.

We perceive no error in the decree of the circuit court, and it will be affirmed.          *Decree affirmed.*

The following opinion was added after this cause had been further considered upon rehearing:

Per CURIAM: Since the rehearing was granted in this case we have given further consideration to the questions involved, and entertain the same views as those expressed in the foregoing opinion. Said opinion is accordingly re-adopted, and it is ordered that the same be re-filed, and that the judgment of affirmance heretofore entered herein be re-entered as the judgment of this court.