NARCISSA I. MITCHELL, Appellee, *vs.* ARTHUR C. MITCHELL, Appellant.

*Opinion filed February 17, 1915—Rehearing denied April 7, 1915.*

1. DURESS—*what does not constitute duress.* Mere annoyance or vexation, or a quarrel or cruelty at a previous time, does not constitute duress, but there must be such compulsion affecting the mind of the party executing the instrument that its execution is not the voluntary act of the maker.

2. SAME—*when previous acts of cruelty cannot be relied upon to show duress.* Acts of cruelty by a husband to his wife at the time she refused to execute certain deeds cannot be relied upon to show duress at a subsequent time, when the wife, accompanied by friends, met the husband in a lawyer's office, where she signed a contract and deed with the object of making a peaceful settlement and providing for the support of herself and her children.

3. PARTIES—*when minor children should be made parties to a bill to set aside deed.* Where a husband and wife, for the purpose of making provision for the separate maintenance of the wife, execute a contract and a deed conveying a life estate in a farm to the wife with remainder to her minor children, and the wife subsequently files a bill to rescind the transaction for fraud on the ground that the deed should have conveyed her a fee, the children

are interested in sustaining the conveyance as to the remainder, and as the defendant cannot be placed *in statu quo* without setting aside the deed as a whole, the children should be made parties.

4. SAME—*when litigation will not be prolonged to allow new parties to be brought in.* Although children of the complainant are not made parties to a bill by her to set aside, for fraud, a conveyance to her of a life estate with remainder to her children, the Supreme Court will not prolong the litigation to allow the children to be made parties, where all the facts concerning the transaction were proved at the hearing but are not sufficient to sustain the decree setting aside the deed, as in such case the decree will be reversed on the merits of the case.

APPEAL from the Circuit Court of Franklin county; the Hon. JACOB R. CREIGHTON, Judge, presiding.

NELSON B. LAYMAN, (THOMAS J. LAYMAN, of counsel,) for appellant.

HART & WILLIAMS, and MOSES PULVERMAN, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, Narcissa I. Mitchell, filed her bill in this case in the circuit court of Franklin county against her husband, Arthur C. Mitchell, for separate maintenance and to set aside a post-nuptial contract and deed. The court granted the relief prayed for and the record was brought to this court by appeal. The decree was reversed because the complainant had not restored or offered to restore, so far as she was able, the consideration received in the transaction which she asked to have set aside, and the cause was remanded to the circuit court. (*Mitchell v. Mitchell,* 263 Ill. 165.) When the cause was re-instated in the circuit court the bill was amended by eliminating the prayer for separate maintenance and offering to restore to the defendant the personal property received by the complainant un-

der the contract and to convey to him such right, title and interest as she had acquired by the deed which she asked to have set aside. The chancellor heard the evidence and entered a decree finding that the complainant was induced to sign a preliminary contract by duress, fraud, misrepresentation and deceit on the part of the defendant and to execute the final post-nuptial agreement by threats and misrepresentation, and that she accepted a conveyance of a life estate without her knowledge or consent and through the fraud of the defendant. The decree set aside the two contracts and the deed to the complainant executed by the parties, and from that decree this appeal was prosecuted.

The deed to the complainant which the decree set aside conveyed to her a life estate in the homestead premises, consisting of a farm of 320 acres, with remainder to the eight children of the parties, seven of whom were minors. The complainant by her bill and on the hearing offered to re-convey to defendant the life estate which she acquired, and, as stated by the court on the former appeal, that was all she could offer, but that was not all that would be necessary, on the hearing, to restore the status, which could only be done by setting aside the deed as a whole. The complainant could not be required to offer to make a conveyance which she could not make, but she alleged that the transaction was a fraud, and if any part of it was to be set aside, justice required that all should be set aside and the status restored. The children were volunteers, who gave no consideration for the conveyance which was delivered to the complainant and they were not made parties to the suit. Aside from any questions concerning the effect upon the remainder of declaring null and void the conveyance of the life estate and setting the same aside, the decree did not place either the complainant or the defendant in the same position occupied before the alleged fraudulent transaction. The contract under which the deed was executed provided for the conveyance of a life estate to the

complainant with remainder to the children, and they were interested in sustaining the conveyance of the remainder to them. So far as the final contract and deed were concerned, the fraud alleged was in conveying to the complainant the life estate, only, with remainder to the children, instead of conveying the fee to the complainant, and in any view of the case she could only have a decree by proving the fraud and setting aside the deed. The children were necessary parties, but if the evidence would not justify a decree setting aside the transaction it would not avail the complainant anything to make the children parties. All the facts were proved on the hearing, and if they were not sufficient to invalidate the contract and deed it would be useless to prolong the litigation by permitting the complainant to make the children defendants.

The facts proved were as follows: The complainant and defendant were married in 1890 and lived together on a farm of 320 acres near the city of Christopher until June 3, 1913. He was also engaged in the real estate business with two other persons and was in the habit of selling lots to be paid for in installments. He could not write, and she was accustomed to sign her own name to the deeds and to make his mark. On June 3, 1913, he had brought home two or three deeds for lots which he had sold and agreed to convey upon payment being made. She refused to sign the deeds and he assaulted her, refused to live with her any longer, turned her out of the house, and followed her, striking her with a lath. They had eight children, seven of whom were minors, the youngest two being four and two years of age, respectively. She went to the home of her uncle, taking the youngest child with her, and the next day she went to Benton to consult with a firm of attorneys. One of the firm advised her to go somewhere and stay until a settlement could be made, and he wrote a letter to the defendant threatening him with a prosecution for the assault and a suit for separate maintenance and the care and

custody of the children, advising a peaceable settlement and requesting the defendant to call at their office the following Saturday with a view to such a settlement. While the complainant was gone to Benton the defendant took the youngest two children to the home of his sister and the complainant did not find out where they were. The next day she met J. R. Biby, city attorney of the city of Christopher, (not a licensed attorney,) who was engaged in the real estate business and was connected with two attorneys, A. R. Dry and Nelson B. Layman, who did not live at Christopher but maintained a branch office there and came there on different days. The firm was called Biby, Dry & Layman. Biby talked with the complainant about getting a settlement of the troubles and from that time acted as a go-between of the parties to procure such settlement. She talked about the matter and made it a condition that the two children were to be returned to her and agreed to come back to his office the next day. The next day was June 6, and the complainant went to the office with her cousin, Alta Brayfield. The defendant had expressed to Biby a willingness to do anything for the sake of a settlement and had agreed to give up the children. It was the day for A. R. Dry to be at the office, and he drew a preliminary contract, which provided that it was only to be in force until a complete agreement should be made on June 10. The defendant came in and the contract was signed. It recited that the defendant was to make a good and sufficient deed to the complainant of the home farm of 320 acres, together with the personal property on the farm, except one horse and buggy; that the complainant was to convey to him her interest in the rest of the real estate and she was to have the care and custody of all the minor children, and there was a stipulation as to his right to visit them. The two children were returned to the complainant, and she has occupied the farm ever since and has had the custody of the minor children. On June 10, 1913, the parties met at the

same office and the final contract was made. The complainant was accompanied by her cousin, Alta Brayfield, and husband, J. N. Brayfield. It was the day for Nelson B. Layman to be at the office and he prepared an agreement for the parties. Biby took some part in the matter, and the contract provided, with much detail, for a separation of the parties and their respective property rights. So far as material here, it recited that the defendant was desirous of making a settlement on his wife and children for their maintenance and support during the life of the wife and had deeded the home place to them, and that the wife was to have the care, custody and control of the minor children and was to maintain them and keep them in school according to the requirements of the school laws. The parties to the contract joined in a deed to the complainant and their children, conveying the farm to the complainant for life with remainder in fee to the children, and they also executed a large number of deeds to the stenographer, Minnie Smith, of lots and lands which the defendant was to have, and she conveyed the same to the defendant, so that there were about forty deeds in all executed at the time.

The chancellor found by the decree that the complainant was forced and induced to enter into the preliminary agreement on June 6 by duress, fraud, misrepresentation and deceit of the defendant, and that she was induced to execute and deliver the final contract by force and misrepresentation and accepted the deed of a life estate without her knowledge or consent, through the fraud of the defendant. There was no evidence fairly tending to prove duress on either occasion. What will amount to duress has been frequently stated by this court. (*Hagan* v. *Waldo,* 168 Ill. 646; *Dorsey* v. *Wolcott,* 173 id. 539; *Hintz* v. *Hintz,* 222 id. 248; *Huston* v. *Smith,* 248 id. 396; *Kronmeyer* v. *Buck,* 258 id. 586.) Mere annoyance or vexation, or a quarrel or cruelty at a previous time, will not constitute duress, but there must be such compulsion affecting the

mind that the execution of a contract or other instrument is not a voluntary act of the maker. The most that complainant could say was, that when the first contract was made she was greatly exercised over the children being taken away from her and for that reason was not in a condition of mind to do business. Her cousin, Alta Brayfield, who was with her, said that she refused to sign the papers unless she got the children back, and that was what Biby testified to. She was contending for possession of the children, but neither Alta Brayfield nor anyone else saw any difference in her from her general mental state. When the second contract and deed were made the cousin and her husband were both with her, and neither of them heard any threat or saw anything done to indicate oppression of any sort. There was no evidence from any source of any threat made by the defendant, and the only thing which the complainant claimed had any effect on her was the fact that the defendant had possession of two of the children and she did not know where they were. That did not constitute duress, and if she was influenced by it in making the preliminary contract it could have had no possible effect several days afterward, because the children were delivered to her as soon as the preliminary contract was signed.

The chancellor found, according to the allegations of the bill, that the final contract and deed were made without the knowledge, consent or acquiescence of the complainant and through the fraud of the defendant. The evidence was that the contract was written in duplicate, and one copy was handed to the complainant and the other was held and read by Layman, the attorney; that the attorney said to the parties that if there was anything in the papers that did not suit them and if they were not satisfied, then was the time to say so, and neither party made any objection; that the deed of the farm was handed to the complainant, and she looked it over and said she did not like the deed, and at first refused to sign it unless the deeds to the defend-

ant were made in the same way; that she said she wanted to have the deeds to her husband made the same as the one to her, and that she afterward signed it. She testified that Biby told her she was getting more than the law would give her if she went to law, which might have been an honest judgment, free from fraud. It was stipulated at the trial that the farm of 320 acres was worth $32,000; that the personal property on the farm was of the fair cash market value of $5000; that the other real estate owned by the defendant was worth $18,000, and that he had other personal property worth $6000 and had a gross income of rentals amounting to $75 per month. It was not so unreasonable to believe that the division of the property,—which was made for the support of the complainant and children and which protected the children against a disposal of the fee by the complainant, the proceeds of which might be dissipated or lost,—was as much as a court would give, that an opinion to that effect would indicate fraud.

In the argument in support of the decree counsel recite and lay great emphasis upon the treatment of the complainant when the defendant assaulted her and drove her from their home because she refused to sign the deeds, but what he did at that time did not tend to prove duress when the contract and deed were made and is of no importance in determining whether they were procured by fraud. It would be material in a suit for separate maintenance to show that the complainant was living separate and apart from the defendant without her fault and it would subject him to punishment, but this suit is not for the purpose of punishing him, and the chancellor could not properly administer punishment for the assault by setting aside the contract and deed.

The evidence did not sustain the finding and decree. The complainant assumed an obligation to maintain the minor children, but this case does not involve any question concerning the rights of the children, as against the defend-

ant, in case there should be any deficiency in the income of the farm for their support and maintenance. Their rights are not affected.

The decree is reversed and the cause is remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*