(No. 29231.—)
HERMAN G. STOLTZE, Appellant, *vs.* DOROTHY A. STOLTZE, Appellee.

*Opinion filed March 20, 1946*

SYLVESTER J. KONENKAMP, of Chicago, for appellant.

CUMMINGS & WYMAN, (DANIEL P. NAGLE, of counsel,) both of Chicago, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county. The case involves an unfortunate controversy between the parties, who are husband and wife. They were married in 1923. In March, 1939, appellant became ill and was taken to a hospital in Chicago. Upon an examination in that hospital, his ill-being was diagnosed as paresis, resulting from syphilis, which he had contracted some two years before. Appellee testified that up to that time she had no knowledge of the cause of his condition. After he had been in the hospital for a period of five days, the management refused to keep him longer and directed his removal. He was then taken by appellee to a private institution in Rockford, where he remained for something over three months. He was then removed by appellee to a private institution for mental patients at Elgin. He remained in that institution for some three and a half months. In January, 1940, he left that institution and returned to the home of the parties in Park Ridge. He remained there until April 22, 1940, when he was returned to the same institution at Elgin. On May 8, 1940, upon a hearing, he was found to be insane by the county court of Kane county, and was committed to the same institution.

On July 10, 1940, appellee was appointed conservatrix of his estate by the probate court of Cook county under paragraph (b) of section 113 of the Probate Act. (Ill. Rev. Stat. 1945, chap. 3, par. 265.) On July 26, 1940, in a proceeding in the county court of Kane county, appellant was found to be sane and was discharged from the institution. On September 7, 1940, he entered St. Luke's hospital in Chicago for a physical, and not a mental, condition. He there underwent two serious operations.

On October 21, 1940, while he was still in St. Luke's hospital but was able to be up and around, the parties signed an agreement by which, after reciting that they had decided to separate, they purported to make a division

of their property. This is the contract sought to be set aside in this case. Thereafter, on November 6, 1940, appellee filed her final account and report as conservatrix in the probate court. This report was approved by the probate court and the conservatrix discharged.

On December 3, 1942, appellant wrote a letter to appellee claiming that the final account filed by her as conservatrix was incorrect, and stating that because of her failure to render a true account, he had repudiated the contract entered into on October 21, 1940. He demanded that she return to him all the property which she had received under said contract. The sole ground upon which he based his alleged repudiation of the contract was appellee's failure to render a true account as conservatrix.

On April 19, 1943, appellant filed this suit against appellee for an accounting of funds received by her belonging to him, both before and after she was appointed conservatrix, to cancel the contract of October 21, 1940, and also to cancel and set aside a deed made by appellant to appellee, conveying to her his interest in their home in Park Ridge, as provided in said contract. No offer was made, either in the letter of December 3, 1942, or in the complaint, to return the securities received by him from appellee under the contract, or to restore to appellee her interest in his share in the estate of his mother. Neither did he, in his testimony or otherwise in the suit, offer to make such return or restoration.

The cause was referred to a master who took the evidence. The master made his report recommending that the complaint be dismissed for want of equity. After overruling exceptions, the master's report was approved. A decree was entered dismissing the complaint for want of equity. Appellant, who was the plaintiff in the court below, has perfected an appeal to this court to review that decree.

At the outset we feel compelled to say that the testimony and exhibits have been so improperly abstracted that

it has been most difficult to ascertain the facts shown by the record. Where there has been an attempt to abstract the testimony, the testimony of the witness is interspersed with comments of counsel in such a manner that in some instances it is difficult, if not impossible, to determine where the testimony ends and the comments of counsel begin. Moreover, the exhibits shown in the abstract have not been indexed as required by the rule. A more serious defect is that in many instances the abstract is inaccurate. For instance, plaintiff's exhibit 22 is referred to in the abstract and the page given where that exhibit appears in the record. What purports to be a quotation from the exhibit is set out in the abstract. This exhibit is not otherwise set out or shown in the abstract. A reference to the record, however, shows that no such exhibit is contained in the transcript. The same is true as to plaintiff's exhibits 21, 23, 24 and 25. What purport to be plaintiff's exhibits 24 and 25 are set out at length in the abstract covering more than four pages of the printed abstract, giving the record pages where the exhibits are supposed to appear in the transcript. A reference to the record, however, shows that no such exhibits are contained in the record at all. Following these exhibits, which are set out at length in the abstract, is the notation that exhibits 21 to 25 are a part of the proceedings of the probate court of Cook county. This court does not have access to the records of the probate court which are not incorporated in the record filed in this court. Whatever those exhibits are, they do not appear in the record in this case and, of course, cannot be considered. Just how such exhibits could be set out at length in the abstract when no such exhibits are incorporated in the record does not readily appear.

The grounds stated in the complaint as the basis for cancelling the contract of October 21, 1940, are that appellant was induced to sign the contract while his petition for the removal of appellee as his conservatrix was pend-

ing, and while he was "under duress due to insanity proceedings and threats of divorce proceedings."

Both the master and the chancellor found that a fiduciary relation existed between the parties. As to the correctness of this finding, there can be no controversy. They further found, however, that the existence of this relation only cast upon appellee the burden of showing the fairness of the transaction in which the contract was entered into; that she had discharged that burden, had taken no advantage of the appellant, and that the contract should be sustained.

The questions as here presented are twofold. First, the record shows that when appellant first became a patient in the private institution at Rockford and while he remained there, and after he was removed to the institution at Elgin, the balance of funds remaining in certain bank accounts belonging to him was transferred by him to appellee. Also, that he transferred his safety-deposit box, in which he kept certain securities, to appellee. Some of these transfers were made to appellee before he was adjudged insane and some afterward. Some of them were made by powers of attorney, executed by appellant, and some by letters addressed by appellant to the banks in which the funds were on deposit, and to the bank in which the safety box was located. It seems that because of his mental condition he harbored a fear that some of his money would be spent improperly and wasted. The record shows that in order to allay these fears, appellee wrote him numerous letters in which she stated in substance that the money would not be wasted, and that when he recovered his health she would render an accounting of all funds and securities received, so that he could see that none had been wasted or improperly used.

It is argued by appellant that these funds and securities were transferred to appellee while a fiduciary relation

existed between them, under her promises to account for the same, and that appellee was required to account for all such funds and securities. This proposition must be readily conceded. As to the transactions and the use of the funds made by appellee, the testimony of the parties themselves is all of the evidence in the record. It shows that while appellant was in these institutions, appellee visited him regularly two or more times each week; that the expense for medical treatment and of keeping him in those private institutions' was very high. Appellee testified that all the funds which he transferred to her, and all the proceeds from securities liquidated by her, were used to pay his hospital, medical and other expenses and her own living expenses during the time he was a patient in the institutions. This evidence is undisputed in the record. She alleged these facts in her answer and that she had properly accounted in her report, as conservatrix, for all such funds. He was her husband and was liable for her support and maintenance, notwithstanding his mental condition. The difficulty with appellant's case relating to appellee's account is that, as already pointed out, neither appellee's inventory nor her final account, filed in the probate court, are shown in the record. They are not in the record notwithstanding what purports to be copies thereof are set out at length in the abstract. There is nothing in the evidence showing what assets she reported as having received or what funds she received or paid out. In this situation, the record, as presented, stands upon her testimony that all funds and securities were properly inventoried and accounted for, and this is not denied by any evidence appearing in the record. She testified that some of the securities matured and were cashed in order to obtain funds to pay necessary expenses attending his illness and care.

Appellee having received some of appellant's money and securities after he had been adjudged incompetent, she was

bound to fairly and fully account for the same and for all that she did receive while a fiduciary relation existed between them. There being no proof in the record as to what she did, in fact, inventory and account for as conservatrix, in view of her positive testimony that she had fully accounted in her final report, appellant's claim as to those items cannot be sustained on the record presented in this case. Appellant's argument that her inventory and final account, filed in the probate court, show that she did not fully inventory or account for all that she received, when there is no proof properly in the record as to what such inventory and final report contain, cannot be accepted.

The second branch of the case relates to the contract and deed sought to be cancelled. The basis of the complaint relating to the execution of the contract was that it was signed by appellant while his petition was pending in the probate court for the discharge of appellee as his conservatrix. As already pointed out, no such petition appears in the record, notwithstanding that the abstract sets forth that it does, giving the record pages where it is supposed to be. The further averment in the complaint is that he was induced to sign the contract while "under duress due to insanity proceedings and threats of divorce proceedings." No insanity proceedings were pending at that time. He had been recently restored and found to be sane. There is no proof that any such proceedings were threatened or even contemplated by anyone. No suit for divorce had been instituted. On the contrary, the contract recites that the parties had decided to "separate without court proceedings."

The testimony of the attorney who drew the agreement was that, in response to a telephone call from appellee, he went to the hospital where appellant occupied a room. As he remembered, appellant was dressed and sitting up. He testified that appellant told him that appellant and appellee

had agreed to divide certain securities and other property interests. Appellant told the attorney what securities and property were to be divided and the division to be made. Appellant also procured a pen and ink to be used by the attorney. A memorandum was written by the attorney, who thought he was simply making a memorandum from which he could prepare the formal contract later. When he started to fold the memorandum in order to put it in his pocket, he told appellant he would have the contract typed and bring it out for his signature. Thereupon, appellant said, "No, I want to do it now." At the request of appellant, the parties then signed the rather crude memorandum which was prepared by the attorney from which he could draw the contract later. At a later date the attorney drew a quitclaim deed to appellant's interest in the home in Park Ridge. At that time they held title to this property as joint tenants. He further testified that appellant told him that he had an interest in his mother's estate, which appellant estimated at that time was worth something like $9000. As a part of the consideration for the contract and the deed to his interest in the home, appellee agreed to release her dower in appellant's interest in his mother's estate. The attorney further testified that appellee said very little in that conversation; that appellant was the one who was active in getting the contract drawn and signed, and who dictated its terms. The deed to appellant's interest in the home was later drawn by the attorney and mailed by him. It was later executed by appellant when neither appellee nor her attorney was present. This was some time after the contract was signed. With the deed, the attorney testified, he mailed to appellant a copy of the inventory and final report and account, which were to be filed by appellee, as conservatrix, in the probate court. There is not a word of evidence in the record that appellant was threatened with insanity proceedings. Ap-

pellant does not so claim. The time and place where he executed the deed were not shown. The deed does not appear either in the abstract or the record so that the date of its execution can be ascertained. The deed was, obviously, either mailed or delivered to appellee by appellant after he had executed it, as it was referred to in the testimony as having been recorded. There was some talk that appellee contemplated bringing a suit for divorce if an amicable settlement of their property rights could not be reached, but this was wholly insufficient to constitute duress.

Duress has been universally defined as a condition which exists where one is induced by the unlawful act of another to make a contract or perform or forego an act under circumstances which will deprive him of the exercise of his free will. There must be such compulsion affecting the mind as shows that the execution of the contract or other instrument was not the voluntary act of the maker. Such compulsion must be present and operate at the time the instrument was executed. The burden of proving such duress is on the person asserting it. *Shlensky* v. *Shlensky*, 369 Ill. 179; *Decker* v. *Decker*, 324 Ill. 457.

Mere annoyance or vexation will not constitute duress, but there must be such compulsion affecting the mind as shows that the execution of the contract or other instrument is not the voluntary act of the maker. *Burandt* v. *Burandt*, 318 Ill. 218; *Harris* v. *Flack*, 289 Ill. 222; *Mitchell* v. *Mitchell*, 267 Ill. 244; *Kronmeyer* v. *Buck*, 258 Ill. 586; *Huston* v. *Smith*, 248 Ill. 396; *Hintz* v. *Hintz*, 222 Ill. 248; *Dorsey* v. *Wolcott*, 173 Ill. 539; *Hagan* v. *Waldo*, 168 Ill. 646.

The case of *Illinois Merchants Trust Co.* v. *Harvey*, 335 Ill. 284, cited and relied upon by appellant, involved a factual situation wholly different from the facts here involved. There the rule as to duress, as set forth in the cases above referred to, was fully recognized and en-

forced. There is nothing in that case which changes or militates against the rule announced in those cases.

Agreements between husband and wife for a separation are not *per se* illegal or invalid. Where a husband and wife are living separate and apart, or where the circumstances are such that they can no longer congenially live together with the mutual confidence and implicit faith in each other which the sanctity of the marriage relation demands, or where the relations between them are such as to render the separation necessary for the health or happiness of one or the other, an agreement between them, fairly and understandingly entered into, adjusting and settling their mutual property rights, may be lawfully made. *Van-Koten* v. *VanKoten,* 323 Ill. 323.

The evidence in this case falls far short of showing that appellant executed the contract and deed at a time when he was mentally incompetent, or that he was induced by any unlawful act of appellee to execute the contract and deed. No compulsion or duress was shown to indicate that the execution of those instruments was not his voluntary act.

The legal presumption is that all persons of mature age are sane, but after they have been adjudged insane the presumption is reversed until it is rebutted by evidence that they have become sane. When the transaction complained of occurred before the inquest is had, the proof of insanity devolves upon the party alleging it. It is otherwise if it took place afterwards. The legal presumption of sanity continues until inquest is had. Then the presumption may be reversed until it is rebutted by evidence showing that sanity has returned. *McGregor* v. *Keun,* 330 Ill. 106.

Here, prior to the execution of the contract and deed, appellant had been found to be sane by the county court of Kane county, in a proper proceeding instituted for that purpose. He was, therefore, presumed to be sane at the

time the contract and deed were made. The fact that his conservatrix, who had been appointed by another court, had not filed her final report and been formally discharged, did not change the effect of the order of the county court of Kane county finding that appellant was sane. In fact, there is no charge in the complaint that appellant was not sane at the time he executed the contract and deed. The *gravamen* of the charge in the complaint is that those instruments were executed by appellant when he was under duress.

The entire argument of appellant in this court is that he was under duress because appellee had not filed her final report as conservatrix. The argument is that because of certain recitals contained in exhibits 21, 22 and 23, it is shown that appellee was resisting making her final report until she could force appellant to execute the contract and deed. We have already pointed out that these exhibits are not in the record and cannot be considered. It follows that there is no evidence in the record to support this argument. But even if all that counsel contends appeared in the record, it would be wholly insufficient to show that appellant was under duress at the time the contract and deed were executed by him.

The master found the issues on all controverted questions of fact in favor of appellee, and the chancellor has sustained such findings. This is not a case where a court of review may set aside a decree on the ground that the finding is not supported by the evidence. *Douglas Lumber Co.* v. *Chicago Home for Incurables,* 380 Ill. 87; *LeBlanc* v. *Atkins,* 387 Ill. 360.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*