**In re Estate of August F. Trecker, Deceased.
Amalia B. Trecker, Petitioner-Appellant, v. John N.
Trecker, Executor, Respondent-Appellee.**

Gen. No. 53,030.

First District, Third Division.

March 6, 1969.

Miller, Gorham, Wescott & Adams, of Chicago (John F. Arnold and Harold C. Osburn, of counsel), for appellant.

Owens, Owens & Rinn, of Chicago (Vincent G. Rinn and Denis J. Owens, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

August F. Trecker died in 1965. His will was admitted to probate but the widow, Amalia B. Trecker, renounced it and demanded her share in the estate as surviving spouse. She also claimed a right to a widow's award and requested the court to fix the proper amount. The executor of the will opposed her claims contending that they had been waived in a post-nuptial agreement between the decedent and his wife. The trial court resolved the issue in favor of the executor. It denied the claim for the widow's award, declared the renunciation of the will ineffective and decreed that the widow had no claim of any kind against her husband's estate.

Amalia and August Trecker were married in 1905. A daughter was born in 1907. Amalia and August lived together until the summer of 1923 when Amalia took the daughter with her and established her own household. The couple lived separate and apart from 1923 until August's death in 1965.

About the time of the separation, the Treckers executed a written agreement. The document bore no date other than July 30. However, a sale of the couple's residence which was contemplated by the agreement occurred

August 1, 1923, so that the probable date of execution of the agreement was July 30, 1923.

The agreement provided: (1) the proceeds from the sale of all property owned as joint tenants would be divided equally by the parties; (2) all household furniture and personal property, with the exception of household tools and the husband's personal clothing, would upon sale of their residence be given to the wife; (3) each party would waive any right to dower or homestead or as spouse including any rights as heir, widow or widower; and (4) in the event of a proceeding for divorce or separate maintenance, the wife would not claim solicitor's fees, alimony or support money.

In this appeal Amalia contends that her rights as widow in her husband's estate were not barred by the agreement because it either lacked consideration or failed in consideration and because it violated the public policy of the State of Illinois.

The evidence disclosed that, in accordance with the agreement, Amalia received all of the furniture and furnishings of the couple's residence except a bed, a dresser and a trunk containing her husband's clothes. The executor asserted that she received other considerations which arose from her ownership of property located on Hood Avenue and from their joint ownership of property located on Lunt Avenue, both in Chicago. The executor claimed that she received a waiver of her husband's right of dower in the Hood Avenue property, which was acquired by her alone on February 28, 1923. August joined her in mortgaging the property and joined her on July 30, 1923, in conveying it to another. The executor also contended that she received one-half the proceeds from the sale of their Lunt Avenue residence. This property was deeded to "August F. Trecker and Amalia Trecker" on January 1, 1913. Ten years later, on August 1, 1923, "August F. Trecker and Amalia Trecker, as joint tenants" conveyed the home to new owners.

A contract of sale dated July 14, 1923, signed by Amalia but not by August, recited that the net proceeds of the sale were "to be equally divided between August F. Trecker and Amalia Trecker, and payment to each to be made in cash to them individually." In 1967, 44 years after the sale, Amalia, then 83 years old and in ill health, said in a deposition that she must have received her one-half share. Upon further questioning, however, she said, "I don't know; I never saw it . . . I don't remember getting it." Counsel persisted in asking her whether she received it and she then replied, "No. Not that I know of."

In corroboration of his contention that Amalia received one-half of the proceeds of the sale, the executor presented an undated and unsigned document purporting to be a closing statement of the sale. It was received in evidence over the objection of the petitioner that it was hearsay. The document bore the name of the attorney who represented August at the time of the sale and was entitled, "Memorandum For Closing Real Estate Sale." It listed the credits to the seller and the purchaser among them the purchase price, mortgage, interest and taxes; and it indicated that the net balance was divided two ways. The purchase price in the document was identical with that in the contract for the sale of the property, dated July 14, 1923, signed by Amalia and the purchasers. The purchasers named in this contract were the same parties to whom the property was conveyed by the Treckers on August 1, 1923. The executor argues that it was not error to admit the document into evidence because it shed light on a transaction that was completed so many years prior to the hearing. In admitting the document the trial court stated: "It supports the contract [the contract of sale] or the contract supports it. It is part of the contract arrangement. If the contract is admissible, in my judgment this would be admissible."

Amalia claimed that there was no property held in joint tenancy upon which the agreement could operate; that even if there was, she did not receive one-half of the proceeds from the sale of the Lunt Avenue property or, in the alternative, that she received only what she was entitled to receive apart from the agreement; that the furniture and personal property obtained by her had only slight value and that she had contributed to its acquisition in the first place; and that the other rights waived were future property rights subject to an executory waiver.

The evidence presented questions of fact as to whether there was consideration and whether the consideration was performed. The resolution of these questions was for the trier of fact and his findings will not be disturbed if there was substantial evidence to support them. Chicago Motor Club v. Travelers Indemnity Co., 57 Ill App2d 17, 206 NE2d 518 (1965). We have examined the testimony and the exhibits and are satisfied that the court's findings of consideration and performance thereof are sufficiently supported; and this is so without regard to the probative value of the document entitled: "Memorandum For Closing Real Estate Sale" which should not have been admitted in evidence. In addition to the proof of consideration—the release by August of his rights of homestead, dower and inheritance was consideration for the similar release executed by Amalia. Laleman v. Crombez, 6 Ill2d 194, 127 NE2d 489 (1955).

Amalia next contends that the agreement was invalid because it was either an agreement to separate, or one that contemplated separation at a future time; that the separation was not necessary for the health or happiness of herself or husband, and that they continued to live together as husband and wife for two months after the agreement was executed.

99

■■■■ An agreement to separate at a future date while continuing to live as husband and wife is invalid but one made in contemplation of immediate separation is not. Lyons v. Schanbacher, 316 Ill 569, 147 NE 440 (1925). Whether Amalia and August continued to live together after executing the agreement was a question of fact but the evidence was sufficient to support a finding that they did not. Likewise, a review of the record supports a finding that there was a valid reason for their separation. When a husband and wife can no longer live together congenially with mutual confidence and implicit faith in each other, or when the separation is necessary for the health and happiness of one or the other, an agreement to adjust their property rights and to separate may be lawfully made. Stoltze v. Stoltze, 393 Ill 433, 66 NE2d 424 (1946). The agreement in this case implies a valid reason for the separation of the parties and nothing in it negates the implication (as in Lyons v. Schanbacher, supra).

■■ Amalia also contends that the agreement was invalid because it released her husband from his obligation to support her. Paragraph three of the agreement waived present and future dower and homestead plus "any and all rights which [either party] may have as spouse . . . , including any rights . . . as an heir at law, widow or widower. . . ." Among the rights of a spouse is the right to support. Paragraph four also released the right to support. It waived a claim for support "in the event of the institution of a proceeding for divorce or separate maintenance. . . ."

■■■ A husband and wife may make a valid separation agreement by which one or each of them releases all his rights in the other's property, including inchoate rights of inheritance and dower. Purcell v. Weasel, 12 Ill2d 356, 146 NE2d 580 (1957); Kohler v. Kohler, 316 Ill 33, 146 NE 476 (1925). An agreement can also be made to waive a widow's award. Yockey v. Marion, 269

100

Ill 342, 110 NE 34 (1915); Pavlicek v. Roessler, 222 Ill 83, 78 NE 11 (1906); In re Estate of Cullen, 66 Ill App2d 217, 213 NE2d 8 (1965). However, a husband cannot by contract relieve himself of the obligation imposed by law to support his wife. Lagow v. Snapp, 400 Ill 414, 81 NE2d 144 (1948); Van Koten v. Van Koten, 323 Ill 323, 154 NE 146 (1926).

Many cases have held that a waiver of the right to support voids the entire agreement, including the release of the rights of dower, inheritance and widow's award. For example: Threw v. Threw, 410 Ill 107, 101 NE2d 515 (1951); Berge v. Berge, 366 Ill 228, 8 NE2d 623 (1937); Lagow v. Snapp, supra. These cases followed the rule that if any part of the entire consideration for a contract is illegal, the whole contract is void. In Lyons v. Schanbacher, supra, the rule was epitomized this way: "That which is bad destroys that which is good, and both perish together."

The case of Laleman v. Crombez, 6 Ill2d 194, 127 NE 2d 489, declared that the good need not perish with the bad. It specifically overruled Lyons v. Schanbacher and Lagow v. Snapp in abolishing the comprehensive rule that an illegal provision makes the entire agreement void. The court stated that it did not necessarily follow that a release of the rights of inheritance became unenforceable because a provision surrendering the right to support was unenforceable. The court observed that the rule lost sight of the purpose for denying enforcement of a promise on the basis of illegality. In its stead, the court imposed a different test: whether the refusal to enforce the other provisions of an agreement would promote the policy of voiding the illegal provision. If it would not, the parties would be held to the terms of the remaining provisions. In Laleman, a husband and wife entered into a separation agreement and waived their rights in any property each other owned or would later acquire. The agreement also provided that the husband

was not to pay any money for his wife's support. Upon her death he claimed a half interest in the real estate she had acquired after their separation. He maintained that the provision in the agreement releasing him from his duty to support her was invalid and that this provision rendered unenforceable the surrender of his rights in her estate. The Supreme Court ruled against his contention and held that no public policy consideration required it to refuse to give effect to the covenant he had made.

The appellant contends that the pre-Laleman rule survives and she cites as authority for her contention Rhodes v. Rhodes, 82 Ill App2d 435, 225 NE2d 802 (1967). Rhodes involved a separation agreement and the court stated that Illinois cases have consistently held that a provision attempting to relieve the husband from his legal obligation to support his wife renders an agreement with respect to mutual property rights unenforceable. However, the court's statement of the law was not reached as a full and final determination of the issue because the validity of the parties' agreement was not argued in the trial court or on appeal. In reversing and remanding the case on other matters, the Appellate Court merely took notice of the possible invalidity of the agreement and directed the parties and the trial court to consider the question in the further proceedings. In doing so the court called attention to several Illinois cases, including Laleman.

The purpose of voiding a wife's waiver of her right to support is to protect the wife who may need the support and to protect the public, upon whom the burden might fall if the husband should fail to discharge his duty. This purpose is fully served by invalidating that part of the agreement which attempts to release the husband from his duty of support. Invalidating the re-

mainder of a property settlement contract would not necessarily protect the wife—particularly if the property settlement was favorable to her. Furthermore, invalidating a property settlement might present problems because of an accomplished division of property and, also, it might conflict with another public policy which encourages property settlements made pending or in contemplation of divorce proceedings. Nogle v. Nogle, 53 Ill App2d 457, 202 NE2d 683 (1964).

 In this case, the husband is dead and the duty of support no longer exists. The personal and real property were divided over 40 years ago. Aside from any waiver of support, there was substantial consideration for the wife's waiver of her rights as a widow. The agreement was relied upon by both parties for 42 years and only after the death of one of them was its validity challenged. The public interest in the agreement is not so great that the wife who had the benefit of her husband's performance should be permitted to avoid her own obligation on the ground that part of the agreement was illegal.

The judgment is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.