GUSTAV BURANDT, Appellee, vs. RICHARD O. BURANDT et al.
Appellants.

*Opinion filed October 28, 1925.*

1. DEEDS—*fraud and duress must be clearly established—burden of proof.* To set aside a conveyance of real estate on the ground of fraud the evidence must be clear and convincing, and to establish duress it is not sufficient to show the exertion of pressure by threats or by mere annoyance and vexation, but it must clearly appear that the force or threats employed actually subjugated the mind and will of the grantor and were the sole and efficient cause of his act, and the burden is on him to sustain the charge that the deed was obtained by duress.

2. SAME—*when decree setting aside deed will be reversed.* Although the chancellor's findings of fact will not be disturbed unless the decree is clearly against the weight of the evidence, yet when it appears from a consideration of the whole record that the evidence does not justify a decree setting aside a deed on the ground of duress the Supreme Court will reverse the decree.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

RICHARD P. POULTON, (JOHN M. HUMPHREY, of counsel,) for appellants.

HENRY POLLENZ, and FRANKLIN RABER, for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court: .

Gustav Burandt on December 19, 1922, filed his bill of complaint in the circuit court of Cook county against Richard O. Burandt and Molly Burandt, his wife, to set aside certain deeds and remove them as clouds upon his title and for an accounting of rents. The bill alleged that the complainant and Dora Burandt, his wife, on April 17, 1902, and February 20, 1913, respectively, acquired the title in fee simple, as joint tenants, to lot 28 in a certain subdivision

and to lot 46 in another subdivision, both in the city of Chicago; that on January 26, 1914, they, with their daughter, Olga, likewise became seized of lot 45, adjoining lot 46 before mentioned; that Olga, the daughter, died on July 16, 1918, and by her death complainant and his wife became the owners of lot 45 in joint tenancy; that because of the ill-health of his wife, and in anticipation of her death, they desired to transfer their property to their son, Richard O. Burandt, to take effect after their deaths; that accordingly on February 20, 1919, they executed a warranty deed to him of their three parcels of real estate for the expressed consideration of $10 and love and affection; that no consideration was paid therefor; that the deed was retained by the scrivener who drew it, for the purpose of completing it, after which he was to return the deed to the complainant and his wife; that it was their intention merely to make a testamentary disposition of the property and that the deed was never delivered; that it was filed for record, without their knowledge or consent, on or about February 24, 1919; that, notwithstanding the deed, they remained in possession of the several properties, paid the taxes and assessments, maintained insurance in their names, collected the rents and kept the properties in repair; that on June 3, 1920, they conveyed lot 28 and received the proceeds of sale; that prior to August 12, 1922, the complainant's wife had been seriously ill with dropsy, and that she was, in consequence, physically incapacitated; that she died on August 26, 1922; that for some time both complainant, his wife and their son realized that her death was imminent; that with this fact in mind, Richard, about August 1, 1922, entered upon a scheme to obtain a deed to lot 45 from complainant and his wife by pleading with them to make provision for him, to become effective after their deaths; that his persistent pleadings amounted to a demand that one of the remaining parcels be conveyed to him; that to enforce compliance with his demand he threatened the life of complainant; that fear-

ing he would carry out his threat, and upon the entreaty of complainant's wife and Richard's express agreement to pay complainant $17 per month during his life, complainant and his wife on August 12, 1922, conveyed lot 45 to Richard by quit-claim deed; that he never intended to carry out his agreement to pay, and never did pay, the stipulated sum; that his representation and promise were made solely for the purpose of inducing complainant and his wife to convey lot 45 to him; that the deed was a fraud upon complainant's rights, and that it should be set aside and canceled as a cloud upon his title. The defendants, Richard O. and Molly Burandt, filed an answer, which was, in effect, a denial of those allegations of the bill upon which relief was sought. A replication to the answer was filed. On the hearing the chancellor found in favor of the complainant. A decree was entered which declared that the deeds dated February 20, 1919, and August 12, 1922, were void, and ordered that they be set aside, expunged from the public records and removed as a cloud on complainant's title, and that the defendants execute a proper deed of conveyance of lots 45 and 46 to the complainant within five days, in default of which a master in chancery was directed to do so. From that decree defendants prosecute this appeal.

Gustav Burandt, the appellee, was a railway fireman and with his wife resided in Chicago for many years prior to her death. Appellant Richard O. Burandt was their son and only surviving child. During their married life appellee and his wife acquired the three parcels of real estate described in the bill. Lot 28 is known as 2609 DeKalb street, and lots 45 and 46 are known, respectively, as 1024 and 1022 South Oakley boulevard, Chicago. Appellee and his wife on February 20, 1919, executed a warranty deed of the three properties to their son. The deed was filed for record on the 24th day of the same month. On June 3, 1920, appellee and his wife sold the DeKalb street property, which had been their home for nineteen years, and the son

executed the deed to the purchaser. The sale price, $2500, was paid to appellee's wife. At that time Richard and his wife lived at 1022 South Oakley boulevard. Appellee and his wife were required by the sale of the property on DeKalb street to vacate it and they moved to the premises occupied by Richard. For a short period the two families lived together, after which Richard and his wife moved to the adjoining property, at 1024 South Oakley boulevard. Subsequently, on August 12, 1922, Richard and his wife by a quit-claim deed conveyed the premises known as 1022 South Oakley boulevard to appellee. On the same day appellee and his wife, also by a quit-claim deed, conveyed to Richard the property at 1024 South Oakley boulevard. At the time of the institution of this suit Richard was thirty-two years of age and employed as an elevator operator.

The testimony concerning the execution and delivery of the deed dated February 20, 1919, is in conflict. Appellee testified that he talked with his wife about the disposition of the three parcels of property; that it was her desire that all the property should go to their son after their deaths; that later they conversed with him upon the same subject and he requested them to execute a will in his favor; that after their conference the son called Isaac Franklin, since deceased, who had been appellee's attorney for a number of years, and he drew the deed; that appellee and his wife signed and acknowledged the deed before a notary public; that the scrivener was to complete the deed and then return it to appellee and his wife; that appellee understood the deed was to take effect after the death of himself and wife; that the deed was afterwards returned by mail but appellee did not look at it; that he had seen the deed only once since its return, and that he did not learn until much later that it had been recorded.

With reference to the execution of the two deeds dated August 12, 1922, appellee testified that Richard came to him and his wife and requested one of the houses before

appellee's death; that upon the refusal of the request by appellee Richard threatened him; that the son's threats caused appellee's wife to weep, and to suggest, in order to avoid violence, that they convey to Richard the property in which he resided; that after some argument they informed Richard they would make the conveyance but that he must pay appellee $17 per month during the remainder of his life; that in compliance with their request Richard called an attorney, who drew the deed; that the attorney inquired of appellee whether he wished to execute the deed, and that he answered in the affirmative; that at appellee's request the attorney also drew a document by which Richard and his wife agreed to pay appellee $17 per month during his life; that appellants signed the document and gave it to appellee; that the document is as follows:

"Aug. 12, 1922. In consideration of the making a conveyance to Richard O. Burandt of Lot 45, in Turner and Bond's sub. * * * the undersigned have this day conveyed to Gustav Burandt the adjoining Lot No. 46 in said subdivision, and also agree to pay to Gustav Burandt the sum of $17 per month commencing September 1, 1922, as long as he lives.

"Witness our hands and seals this 12th day of August, 1922.

RICHARD BURANDT, (SEAL)
MOLLY BURANDT.   (SEAL)"

—and that appellants never paid or tendered any of the monthly payments due under it.

Appellant Richard O. Burandt testified that he lived with his parents until he was twenty-two years of age and assisted in their support; that prior to his marriage he gave his wages to his mother; that while he lived at 1022 South Oakley boulevard he gave her $25 per month and such additional sums as he could spare; that shortly after his parents came to that number, following the sale of the DeKalb street property, he moved to 1024 South Oakley boulevard, and while residing there not only paid his mother $35 per month and occasional sums in addition, but also $364 for repairs to the roof and sewer and for plumbing and a new

heating plant. His version of the conveyances of August 12, 1922, is that his father wanted one of the properties re-conveyed to him; that appellant was willing to make such re-conveyance and to pay his father $17 per month in case he was unable to work; that the arrangement was consummated by the execution of the two deeds and the document which required appellants to make the monthly payments to appellee; and that in accordance with the agreement Richard offered his father the payments at different times but that he never would accept them.

Dora Burandt, appellee's wife, died on the evening of August 26, 1922. On that day, upon complaint of his son, appellee was cited to appear in the court of domestic relations to answer a charge for non-support of his wife. Walter A. Meyer, an attorney, testified that Richard on that occasion offered to pay rent but that his father refused to accept it, stating that he did not need any money, and that the father at the same time withdrew from his shoe or sock $950 in money, which he threw on the floor of the judge's chambers. Sarah Liden, an attache in the social service department of the court of domestic relations, corroborated the testimony of attorney Meyer. Molly Burandt, the wife of Richard, testified that she was present when the conveyance of August 12, 1922, to her husband was made; that she understood from the conversation that he was to pay appellee $17 per month, and that she and her husband had offered him that amount on several occasions but that he had refused in each instance to take it. Helen Czeske, the daughter of Molly Burandt, testified that she was present when the transfer of the property was made, and that she heard both appellee and his wife say that Richard was to have the house at 1024 South Oakley boulevard. Margaret R. Clark, an acquaintance of the families of appellee and appellants, testified that she heard Dora Burandt, appellee's wife, say that Richard had worked hard and should have the property which he occupied; that she heard ap-

pellee say that Richard should retain one property and re-convey the other to appellee, but she heard no conversation about the payment of $17 per month.

Appellee testified in rebuttal that he never told Margaret R. Clark that he desired to give Richard one of the parcels of property; that neither Richard nor his wife ever offered him $17 in the court of domestic relations or elsewhere; that Helen Czeske was not present when the deeds of August 12, 1922, were drawn, and that he made repairs at 1024 South Oakley boulevard, which included the tearing out of windows, varnishing the house, installing a furnace and building an additional room up-stairs. The bill for the furnace was $357, but from certain exhibits which appellee offered in evidence it appears that the furnace was sold to his wife.

One of the errors assigned and argued by appellants for the reversal of the decree is that the evidence does not support it. To sustain the decree appellee insists that the evidence shows, as the decree finds, that the deed of February 20, 1919, by which the three properties were conveyed to appellant Richard O. Burandt, was never delivered, and that the deed of August 12, 1922, by which lot 45 was conveyed to the same appellant, was obtained by fraud and duress on his part. Lot 28 was conveyed to a third party on June 3, 1920, by Richard at the request of appellee and his wife. Lot 46 was re-conveyed to appellee on August 12, 1922. Hence lot 45, which is occupied by appellants, is the only property involved in this controversy. If, therefore, the deed to that lot, dated August 12, 1922, is a valid conveyance, the question whether the earlier deed from the same grantors to the same grantee was ever delivered becomes immaterial and need not be considered.

On August 12, 1922, appellee and his wife by a deed dated that day conveyed lot 45 to their son, Richard, and he, with his wife, in turn conveyed lot 46 to appellee. To each grantee was conveyed the property in which he resided.

In addition to the execution of the deeds an agreement was signed on the same day which recited that appellants, in consideration of the conveyance of lot 45, had conveyed to appellee the adjoining lot and agreed to pay him $17 per month, beginning on the first day of September, 1922, and continuing as long as he lived. To determine whether the deed to the son is the result of fraud and duress on his part, as charged by appellee, the relations of the parties must be kept in view. The son, prior to his marriage, had given his wages to his mother. After his marriage he paid her a fixed sum monthly for a considerable period and additional sums occasionally. She had stated to Mrs. Clark, apparently a disinterested witness, that her son had worked hard and should have the property which he occupied. Helen Czeske, the daughter of Richard's wife by a former marriage, heard both appellee and his wife say that Richard was to have that property. The deed to him carries out that purpose. Moreover, the deeds and the agreement were not signed precipitantly, but their execution followed a discussion in which the parties participated. None of the instruments was drawn by the appellee or either appellant but an attorney was called for that purpose. After the attorney had drawn the deed to the son he inquired of appellee whether he wanted to sign it, and he answered that he did. The mutual conveyances to father and son and the agreement to pay $17 per month to the father during his lifetime are parts of the same transaction. The sole advantage did not accrue to the son, for, apart from the re-conveyance of the adjoining premises to the father, the son incurred an obligation to pay a stipulated sum monthly for an indefinite period. After the execution of the deeds and the death of appellee's wife the relations between father and son became more and more unfriendly. Whatever reasons for their differences may exist, the conduct of the son, as shown by this record, does not amount to duress or compulsion in procuring the execution of the deed as

charged. Mere annoyance and vexation will not constitute duress. (*Harris* v. *Flack,* 289 Ill. 222.) To establish duress as ground for the avoidance of a contract, conveyance or other act, it is not sufficient to show the exertion of pressure by threats, but it must clearly appear that the threats employed actually subjugated the mind and will of the person against whom they were directed and were thus the sole and efficient cause of the action which he took. (1 Black on Rescission and Cancellation, sec. 223.) It was incumbent upon appellee to sustain the charge that the deed by which lot 45 was conveyed to the son was obtained by duress. That burden had not been sustained.

The agreement requires Richard O. Burandt to pay his father $17 per month during his lifetime. Richard testified that he offered to pay this sum on different occasions but that his father in each instance refused to accept it. Appellant Molly Burandt corroborates this testimony. Walter A. Meyer, the attorney, who was present in the court of domestic relations, testified that Richard told his father that he owed him some money for rent, but that his father said he did not need any money and exhibited a considerable sum of money, which he threw on the floor of the judge's chambers. Sarah Liden, who was also present in that court, testified that the question of money was under discussion between father and son and that she heard the question of rent mentioned. The father is entitled to $17 per month in accordance with the terms of the agreement made at the time of the conveyance of August 12, 1922. Appellants admit their obligation and insist that they have been and are ready to discharge it. In any event, they are amenable to the process of a court of law for the recovery by appellee of the money due him under that agreement.

Although the chancellor's findings of fact will not be disturbed unless the decree is clearly against the weight of the evidence, yet when it appears from a consideration of the whole record that the evidence does not justify the de-

cree it is our duty to reverse it. (*Sharkey* v. *Sisson*, 310 Ill. 98; *Bordner* v. *Kelso*, 293 id. 175; *Hoffman* v. *Hoffman*, 316 id. 204.) To set aside a conveyance of real estate on the ground of fraud the evidence must be clear and convincing. (*Sirois* v. *Sirois*, 308 Ill. 453; *Mosbarger* v. *Brown*, 313 id. 238; *Ehrlich* v. *Tritt*, 316 id. 221.) The evidence in this record is not of such a clear and convincing character as to justify this court in declaring void the deed of August 12, 1922, to appellant Richard O. Burandt.

The decree of the circuit court will be reversed and the cause remanded, with directions to dismiss the bill for want of equity.
                              *Reversed and remanded, with directions.*