(No. 36615.—

LEONARD KAPLAN, Appellant, *vs.* ELAINE KAPLAN *et al.,* Appellees.

*Opinion filed May 25, 1962.—Rehearing denied July 12, 1962.*

SCHMETTERER & SCHMETTERER, of Chicago, for appellant.

PETER J. CHAMALES, and DAVIS, BOYDEN, JONES & BAER, both of Chicago, (JOSEPH W. BAER, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Plaintiff, Leonard Kaplan, filed a complaint in the superior court of Cook County praying, on the grounds of duress and lack of consideration, for either the recission or reformation of a property settlement agreement he had entered into with his wife, Elaine Kaplan, prior to their divorce, and of a trust agreement, designed to secure his covenants in the property settlement agreement, whereby he had transferred certain real property, stocks and insurance policies to the LaSalle National Bank, as trustee. Upon separate motions by defendants, the wife and the bank, the complaint was stricken and dismissed by an order which found that its allegations were "not sufficient

in law to maintain the action." A freehold being involved, plaintiff has appealed directly to this court for review.

Facts gathered from the complaint and exhibits thereto show that Elaine Kaplan sued the plaintiff for separate maintenance on November 23, 1955, and that such action was resisted by plaintiff. On October 29, 1956, the parties entered into a property settlement agreement and, on the same day, the complaint for separate maintenance was amended to one for divorce on the grounds of desertion. Subsequently, on November 15, 1956, Elaine Kaplan was granted an uncontested decree for divorce which awarded her the custody of two minor children and recited that the parties had entered into a written agreement settling and adjusting property rights, alimony and child support. By the terms of the property settlement agreement, plaintiff, for a recited consideration of $10, and in further consideration of "mutual covenants" and "other good and valuable consideration," "freely and voluntarily" agreed to pay Elaine Kaplan an annual sum of $5,200 as permanent alimony, subject to conditions relating to death, remarriage and increase of income, to pay his wife $100 a week for the support of their two minor children, as well as certain educational and medical expenses, and to execute a trust agreement, which was incorporated in the settlement agreement by reference, whereby plaintiff would transfer to a trustee certain described property, including real estate, for the purpose of securing his covenants. The trust agreement, which gave the trustee broad powers to sell, lease or invest the trust property, was executed by the parties the same day.

Going to the allegations which more directly concern the issues here, the complaint, which was filed approximately three years after the agreements were entered into, alleged that plaintiff had received no consideration for entering into the agreements, and that they had been entered into by him as the result of duress applied upon him by Elaine

Kaplan. Specifically, it was alleged that during the pendency of the separate maintenance action private detectives employed by Elaine Kaplan or her attorneys forcibly broke into an apartment and took photographs of plaintiff and another woman, and that although there had never been immoral or improper behavior between plaintiff and the woman, the circumstances of the occurrence and the photographs were intended to cause great embarrassment to plaintiff and the other woman. Continuing, it was alleged that Elaine Kaplan thereafter expressly threatened to publicize the photographs by suing the other woman for alienation of affections, "by publicizing the said occurrence and photographs, and by other means calculated to cause great embarrassment to Leonard Kaplan, to the said woman in whose apartment he had been photographed, and to the family of said woman, all without cause." Immediately following, it was alleged that "in order to avoid the said embarrassment to himself and to the said woman, and under duress as aforesaid," plaintiff agreed to sign the two agreements previously described. How closely the execution of the agreements followed the alleged photographing and alleged threats of publication in point of time does not appear.

Defendants filed motions to dismiss, each alleging a defense of *laches* among other things, and to this defense plaintiff pleaded that he and the woman with whom he was photographed are now both married to spouses not parties to the law suit, and that the marriage of each has placed the plaintiff in a better position to now resist threats of exposure of his friendship with such woman, in that "neither her moral character, nor the moral character and private reputation of her and this plaintiff can now be harmed as severely if the photographs described in the complaint were now published in accordance with threats."

Plaintiff contends here that the allegations of his complaint are sufficient to entitle him to equitable relief on the

grounds of duress and, while the order of dismissal made no express finding in such regard, further claims that the allegation that he received no consideration for signing the agreements stated grounds for relief upon which he should have been accorded a hearing on the merits. The latter claim may be quickly disposed of, for plaintiff's pleadings, on their face, show its inefficacy. By the express terms of the property settlement agreement, into which the trust agreement was incorporated, plaintiff and Elaine Kaplan released and quit-claimed to each other all rights of dower, inheritance, descent, distribution and community interest in the estate of the other, real or personal, and whether now owned or subsequently acquired. Without considering other elements of consideration flowing to the plaintiff which could be mentioned, such mutual covenants were in themselves sufficient to support the agreement. *Kroell* v. *Kroell,* 219 Ill. 105, 112; *Seuss* v. *Schukat,* 358 Ill. 27, 34.

Turning to the matter of duress, plaintiff's citation of *James* v. *James,* 14 Ill.2d 295, and *Guyton* v. *Guyton,* 17 Ill.2d 439, as authority for an argument that the allegations of his complaint required the court below to grant him a hearing on the merits, not only assumes that the property settlement here was an unfair one, but also misconceives the nature of the issue presented upon appeal. While we did indeed hold in the cited cases that equity will grant relief where such property settlements are attended by coercion, fraud or misrepresentation, the issue to be determined here is whether the alleged duress of which the plaintiff complains is such as would render the contract voidable at law and entitle him to equitable relief.

Duress has been defined as a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive him of the exercise of his free will, and it may be conceded that a contract executed under duress is voidable. (*Shlensky* v. *Shlensky,* 369 Ill. 179; 12 I.L.P., Contracts, sec. 126; Restatement

of Contracts, § 492.) Acts or threats cannot constitute duress unless they are wrongful; however, the rule is not limited to acts that are criminal, tortious or in violation of a contractual duty, but extends to acts that are wrongful in a moral sense. (Restatement of Contracts, § 492, *Comment g.*) At common law duress meant only duress of the person, that is a threat to life, limb or liberty, and the threat must have been of a nature as to create such fear as would impel a person of ordinary courage to yield to it. (*Illinois Merchants Trust Co.* v. *Harvey,* 335 Ill. 284; 17A Am. Jur., Duress and Undue Influence, sec. 10.) Under modern views and developments, however, duress is no longer confined to situations involving threats of personal injury or imprisonment, and the standard of whether a man of ordinary courage would yield to the threat has been supplanted by a test which inquires whether the threat has left the individual bereft of the quality of mind essential to the making of a contract. (*Decker* v. *Decker,* 324 Ill. 457; *Slade* v. *Slade,* 310 Ill. App. 77; 17A Am. Jur., Duress and Undue Influence, sec. 11.) Any wrongful threat which actually puts the victim in such fear as to act against his will constitutes duress and, according to some authorities, a threat of personal or family disgrace may be of such gravity as to deprive the person threatened of the mental capacity necessary to execute a valid contract.. (*Tallmadge* v. *Robinson,* 158 Ohio St. 333, 109 N.E.2d 496; *Fox* v. *Piercey,* 119 Utah 367, 227 P.2d 763; *Coleman* v. *Crescent Wire Cable Co.* 350 Mo. 781, 168 S.W.2d 1060.) Generally, as stated in 17A Am. Jur., Duress and Undue Influence, sec. 11, p. 573, "the threat must be of such nature and made under such circumstances as to constitute a reasonable and adequate cause to control the will of the threatened person, and must have that effect, and the act sought to be avoided must be performed by the person while in that condition * * *."

Considering the complaint in the light of these principles,

it is our opinion that the allegations fall short of establishing grounds upon which to lay a claim of legal duress. The first allegation of the complaint is that Elaine Kaplan threatened to publicize the photographs by suing the woman in whose apartment they had been taken for alienation of affections. This allegation clearly presents no basis for a claim of duress inasmuch as it is well established that it is not duress to institute or threaten to institute civil suits, or for a person to declare that he intends to use the courts to insist upon what he believes to be his legal rights, at least where the threatened action is made in the honest belief that a good cause of action exists, and does not involve some actual or threatened abuse of process. (See: 17A Am. Jur., Duress and Undue Influence, sec. 18 and cases there collected.) In a persuasively similar situation it was held in *Schumm* v. *Berg*, 37 Cal. 2d 174, 231 P.2d 39, that the expressed intention of the mother of an illegitimate child to institute paternity proceedings against the putative father if he did not enter into a contract for the support of the child did not make the contract invalid as having been obtained by a threat of injury to the father's reputation, even though the father was a wealthy movie star who would incidentally suffer unfavorable publicity if the paternity suit was brought. The allegations of the complaint in the present case make it appear that Elaine Kaplan would have the honest belief, if not the right, that she had a cause of action for alienation of affections. Any use of the photographs in such a proceeding, or personal embarrassment suffered by plaintiff or his woman friend as a result, would be no more than incidents of the suit.

The only other threat attributed to Elaine Kaplan by the allegations of the complaint is that she threatened to publicize the photographs and occurrence by other means calculated to cause great embarrassment to plaintiff, the other woman, and the latter's family. Even if we assume, without deciding, that the threat of an outraged and humiliated wife

to publicize the affair of her husband is wrongful in a moral sense, it is our opinion that this allegation is not sufficient to entitle plaintiff to the relief he seeks. While the defense of duress has developed along liberal lines, we are not prepared to say as a matter of law that a threat of personal embarrassment, particularly under the circumstances reflected in the pleadings, was such as to control the will of the plaintiff, or to render him bereft of the quality of mind essential to the making of a contract. We have said before that duress is not shown by subjecting one to annoyance or vexation, (*Stoltze* v. *Stoltze,* 393 Ill. 433, 442; *Burandt* v. *Burandt,* 318 Ill. 218, 226,) and it is our belief that a threat of personal embarrassment does not rise above annoyance and vexation. In looking to the circumstances under which the agreements were executed, we cannot help but note the recital that the settlement agreement was executed "freely and voluntarily" by plaintiff, and that he did so with the "benefit of investigation, advice and recommendation" of legal counsel. Construing such allegations of the complaint against the pleader, it would appear that the influences of the alleged duress had been removed before the agreements were entered into.

The order of the superior court of Cook County is affirmed.

*Order affirmed.*