John A. Hyde *et al.*, Plaintiffs-Appellants, *v.* John W. Lewis, Secretary of State, *et al.*, Defendants-Appellees.

(No. 57408; ■■■)

First District (3rd Division)—January 9, 1975.

John A. Hyde, of Chicago, for appellants.

William J. Scott, Attorney General, of Springfield, (Donald S. Carnow and Michael B. Weinstein, Assistant Attorneys General, of counsel), for appellee John W. Lewis.

Jerome Torshen, of Torshen, Cohen & Eiger, of Chicago, for appellee State Security Insurance Co.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The plaintiff, John A. Hyde, an attorney at law, brought this class action seeking a declaration that the Illinois Safety Responsibility Law was unconstitutional. Named as defendants, both individually and in their official capacities, were the Secretary of State, the Director of the Department of Insurance and the Director of the Department of Public Works and Buildings. Also named were the State Security Insurance Company, and "all divers unknown insurance companies which are now or have written insurance policies under the Financial Responsibility Act of Illinois since its enactment." In addition to a declaratory judgment, Hyde requested injunctive relief against enforcement of the Act, damages and an accounting for the allegedly wrongful premiums charged by the defendant insurance companies. Orders were entered dismissing the 23-count, 104-page second amended complaint for want of equity and denying Hyde's motion to vacate the dismissal. The dismissal order included findings that the Act was constitutional both on its face and in application and that the complaint failed to state a cause of action.

Hyde appealed directly to the supreme court, which transferred the cause to this court. Despite the size of his complaint, the issues before us are few. Hyde asks that the provisions of article II of the Safety Responsibility Law, which required that uninsured persons involved in accidents prove their financial responsibility for the future, be declared unconstitutional on their face and as applied, and he seeks remandment for trial on the questions whether he is entitled to an injunction against the named State officers and to the rescission of all insurance contracts entered into by members of the plaintiff class in compliance with the Act.

This suit followed a train of events set in motion on May 12, 1969. On that date, according to the allegations of the complaint, Hyde was involved in an automobile accident in a public parking garage owned by the city of Chicago. At the time, his driver's license and vehicle registration were in good standing, but his auto was not covered by liability insurance.

The Illinois Safety Responsibility Law, at the time relevant to the disposition of this case (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—101 et seq.), provided for the requirement of both security deposit and proof of financial responsibility for the future from persons involved in automobile accidents. The law was administered jointly by the Department of Public Works and Buildings and the Secretary of State. Accident re-

ports were required to be filed with the Department, which, if it found that death, personal injury or more than $250 damage to property had been sustained, determined whether an involved owner or operator was one to whom the Act applied. (Section 7A—201.) Section 7A—202 exempted several categories of owners or operators from the requirements of the Act. The principal grounds for exemption were either adequate evidence of financial responsibility such as insurance or bonding arrangements, or facts negating a person's liability such as ownership of a vehicle legally parked at the time of its involvement in an accident. None of these exceptions applied in Hyde's case.

By the terms of section 7A—201, once the Department had determined the applicability of the Act, it certified to the Secretary of State the name of the affected owner or operator and amount of security deemed necessary. Persons required to file security were also required to file proof of their future financial responsibility. (Sections 7A—201 and 7A—204 (C).) Within 30 days after receiving the Department's certification and 10 days after relaying adequate notice to the individual certified, the Secretary summarily suspended his driver's license or his vehicle registration if he had not made the necessary filings. Persons aggrieved by the action of the administering authorities could request a hearing (section 7A—101), and suspensions were subject to judicial review under the Illinois Administrative Review Act (section 7A—102).

Hyde received notice from the Secretary's office shortly after his accident that he had been certified by the Department as subject to the Act. The notice stated that unless he posted a $200 security deposit and supplied proof of his future financial responsibility, his license and registration would be suspended.

Proof of financial responsibility for the future is defined in article III of the Act, as:

> "* * * proof of ability to respond in damages for any liability thereafter incurred resulting from the ownership, maintenance, use or operation of a motor vehicle for bodily injury to or death of any person in the amount of $10,000, and subject to said limit for any one person injured or killed, in the amount of $20,000 for bodily injury to or death of two or more persons in any one accident and for damage to property in the amount of $5,000 resulting from any one accident. Such proof in said amounts shall be furnished for each motor vehicle registered by every person required to furnish such proof." (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—302.)

Section 7A—314 of the Act provided for three acceptable alternative methods of furnishing the requisite proof: a liability bond, a deposit of

equivalent money or securities with the State Treasurer, or an acceptable certificate of vehicle liability insurance. For persons without substantial assets only the third choice was practicable.

Hyde paid the security deposit asked of him, but informed the office of the Secretary that he would not post proof of future responsibility "so long as the State of Illinois by and through its Department of Insurance refuses or is unable to explain to me why it permits and, by acquiescence, approves excessive rates of 25 to 50 per cent over and above the regular premium when financial responsibility coverage is requested." He also required the Secretary to defer action on his suspension until the Department of Insurance responded to a protest he had made to it concerning the alleged surcharge. The request was not granted, nor was he granted a hearing.

In November 1969, 3 months after his suspension became effective, Hyde negotiated a contract of insurance with the defendant State Security Company. He claimed that the cost of the policy included a 5 percent surcharge for filing a certificate of the policy with the Secretary's office as proof of his financial responsibility. Hyde paid all but 5 percent of the premium and State Security cancelled his coverage and notified the Secretary, who in turn suspended Hyde's vehicle registration and driving privileges in April 1970. In order to carry on his law practice, which necessitated travel to courts in northern Illinois and neighboring states, Hyde capitulated and paid the premium balance. The policy was reinstated and the suspension lifted.

In September 1970 Hyde was discharged in the negligence action filed against him after the accident. This, under section 7A—207 of the Act, terminated the requirement for a security deposit but did not relieve Hyde of the need to maintain proof of future responsibility. But when his November 1970 insurance premium invoice revealed a 25 percent surcharge, he refused to pay, and once again his driver's license and registration were revoked. Despite the lapse of many months, he still had not been granted a hearing by either the Department of Insurance or the Secretary of State, so in December 1970 he filed this action. On August 4, 1971, the office of the Secretary informed Hyde that the file on his case was closed, because the Act had been amended to terminate the requirement that proof of future responsibility had to be filed in accident cases. A month later his complaint was dismissed.

While this proceeding was pending in the Circuit Court of Cook County, a case involving similar issues was being processed in the District Court of Northern Illinois. In 1970 a panel of three Federal judges upheld the constitutionality of the provisions of the Illinois act for security deposit and proof of future responsibility. However, the Federal court also

declared that the State's failure to incorporate a hearing procedure into its administration of the law contravened the explicit language of section 7A—101, and the State agencies concerned were ordered to implement the statutory right to a hearing. *Pollion v. Lewis* (N.D. Ill. 1970), 320 F.Supp. 1343.

*Pollion* was appealed directly to the Supreme Court of the United States, which vacated the District Court opinion and remanded the case (403 U.S. 902 (1971)) for reconsideration in light of its decision in *Bell v. Burson* (1971), 402 U.S. 535. In *Bell*, the court scrutinized the State of Georgia's motor-vehicle financial-responsibility law and held that where a statutory scheme significantly involves the issue of an affected individual's liability, a State must as a matter of due process provide a means of determining whether there is a reasonable possibility of a judgment being rendered against him before it may deprive him of his license and registration for failure to post security.

■ ■ Like the Illinois act, the Georgia statute provided for the posting of financial responsibility for the future by all individuals who were required to file a security deposit. However, the validity of that requirement was not reached by the Supreme Court, since the period for which such proof was demanded had expired. But in the second *Pollion* opinion (*Pollion v. Lewis* (N.D. Ill. 1971), 332 F.Supp. 777), handed down soon after the entry of the order in the present case, the principle enunciated in *Bell* was extended to encompass the filing of proof of future responsibility, as well as the posting of a security deposit. It was held that neither may be required, in the context of a fault-oriented financial responsibility law, without preliminary inquiry into the likelihood whether the uninsured individual will ultimately be held responsible for his accident. Since, contrary to the language of section 7A—101, the plaintiffs in *Pollion* had been unable to secure a hearing, the Act was held unconstitutional as applied.

If the controversy between Hyde and the administrators of the Safety Responsibility Law were still alive at the time of the *Pollion* decision it could have been resolved by that decision and the trial court might not have made its erroneous finding that the Act was validly applied by the State authorities. However, prior to the final *Pollion* decision and, indeed, before entry of the trial court's order in this action, the issue was rendered moot by an amendment which deleted from the Act the requirement of proof of future financial responsibility. (P.A. 77-327, § 1, eff. July 22, 1971.) This was the amendment which prompted the Secretary of State to notify Hyde that his file had been closed.

Hyde acknowledges that, because of the previously described develop-

ments, the current thrust of his appeal is to secure remandment of the cause for the trial of counts 12, 13 and 14. The gist of all three is the same. Taken together, they allege that members of the plaintiff class were coerced into purchasing policies of insurance from the defendant class of insurance companies, owing to the wrongful acts of the Secretary of State and the Department of Public Works and Buildings in enforcing the law as they did; that as experts in their field State Security and other insurance companies knew or should have known that the law was not being properly applied; that in consequence the plaintiff class asks rescission of its contracts with the defendant insurers and the refund of all premiums paid under duress, together with interest and special damages.

■■ Duress has been defined as a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive him of the exercise of his free will. (*Kaplan v. Kaplan* (1962), 25 Ill.2d 181, 182 N.E.2d 706.) But the use or threatened use of civil proceedings to enforce a claim is not considered duress, "* * * at least where the threatened action is made in the honest belief that a good cause of action exists, and does not involve some actual or threatened abuse of process." (*Kaplan v. Kaplan*, 25 Ill.2d 181, 187, 182 N.E.2d 706.) This exception is equally effective when the party threatening suit is a governmental agency possessing extraordinary powers of coercion. In Illinois, a sale of land to township trustees for use as a school site has been held free of duress, where the terms, resulting in a sale below the land's apparent market value, where negotiated subsequent to initiation of condemnation proceedings by the eventual buyers. *Mattion v. Trustees of Schools* (1971), 2 Ill.App.3d 1035, 279 N.E.2d 66; see also *Mills v. Forest Preserve District* (1931), 345 Ill. 503, 178 N.E. 126.

■■ While recognizing that State authorities regrettably erred in their application of the Safety Responsibility Law, and accepting the fact that the likely effect of this enforcement was to influence Hyde and persons in similar straits to contract for liability insurance, we cannot agree that the facts alleged show legal duress. Mere error by State officers in the interpretation and application of laws regulating public activity, without more, cannot be characterized as a wrongful inducement. The natural effect of governmental regulation is to impel the restructure of certain private relationships. That which one formerly chose to do or not to do may now be required of him or prohibited, in the interest of the general welfare. Like the threat to condemn land, the threat to suspend driving privileges, when incidental to tasks with which governmental agencies are charged by law, cannot be construed as a wrongful act amounting to

duress, unless at the very least it is shown that the law was applied in bad faith.

■■ Hyde has not alleged facts demonstrating anything more than administrative insensitivity and bureaucratic indifference to his problems. We deplore the stolid response to his pleas for a hearing, but we do not find in it the bad faith needed to sustain a charge of duress. As a duly enacted State law, the Act itself was presumed constitutionally valid. (*People ex rel. Koch v. Rinaker* (1911), 252 Ill. 266, 96 N.E. 897.) Since it had never been challenged, State officers could rely on that presumption. Moreover, similar statutes, similarly enforced, had been upheld in other jurisdictions. *Rosenblum v. Griffin* (1938), 89 N.H. 314, 197 A. 701; Annot., 35 A.L.R.2d 1011 (1954).

■■■ Even if it were conceded that the State wrongfully pressured Hyde into purchasing insurance, he has stated no cause of action against the insurer which benefited from his necessity. A contract executed under duress is as a general rule voidable by the coerced party. (*Kaplan v. Kaplan.*) But when a third party who is a stranger to the agreement supplies the wrongful inducement, the contract will be set aside only if the beneficiary of the duress had knowledge of the wrongful inducement. (*Compton v. Bunker Hill Bank* (1880), 96 Ill. 301; 2 Restatement of Contracts, §§ 496, 477 (1932).) It is safe to assume that insurers like State Security were aware of the manner of enforcement of the Safety Responsibility Law. But, despite their purported expertise in this area of the law, they had no compelling reason to conclude that the obligatory purchase of insurance was wrongful, until it had been declared so by a court.

■■ It has also been suggested that State Security exerted "moral duress" by charging Hyde a premium markup for his financial responsibility policy. Some cases do, in general terms, propound a rule that the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another is moral duress. However, undue advantage has been found only under the most extreme circumstances. See, *e.g., People ex rel. Buell v. Bell* (1959), 20 Ill.App.2d 82, 155 N.E.2d 104, where false and fraudulent representations by a woman's doctor and her former husband while she was hospitalized in a weakened and sedated condition were held moral duress, vitiating her signed consent to the adoption of her newborn baby. More apt, given the facts alleged in this case, is the rule that a party's act in signing a contract remains voluntary, even if he signs because of straitened circumstances, as long as he had ample time for inquiry, examination and reflection, and the party benefiting was not responsible for the circumstances creating the neces-

sity. (*French v. Shoemaker* (1871), 81 U.S. (14 Wall.) 314.) The fact that the alternatives available to Hyde were unattractive did not render his agreement a coerced one.

The judgment is affirmed.

Affirmed.

McNAMARA and MEJDA, JJ., concur.