Oak Park Trust & Savings Bank, as Trustee Under Trust Agreement Dated October 8, 1964, Identified as Trust No. 4731, Plaintiff-Appellee, v. Bertha Gae Fisher, Defendant, John H. Vierow, Third-Party Defendant-Appellant.

Gen. No. 51,253.

First District, First Division.

February 20, 1967.

Fleck & Pollack, of Chicago (Charles J. Fleck and William E. Pollack, of counsel), for appellant, John H. Vierow.

Herrick, Vette, McNeill & McElroy, of Chicago (William T. McNeill and Ray W. Fick, Jr., of counsel), for appellee, Oak Park Trust & Savings Bank.

Emanuel Morris, pro se, of Chicago, guardian ad litem for appellee, Bertha Gae Fisher.

Samuel Deutsch, of Chicago, for certain intervenors-appellees.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is an appeal by a third-party defendant from a decree which found that defendant, Bertha Gae Fisher,

was competent when she executed a trust agreement on October 8, 1964, and that "at any time after December 9, 1964," she was not competent to revoke the trust agreement. Purported acts of revocation were found to be void because of defendant's incompetency, and the trust agreement was decreed to be valid and effective. The determinative issue is whether the decree is against the manifest weight of the evidence.

The proceedings were initiated by a complaint for instructions filed on April 27, 1965, by the Oak Park Trust & Savings Bank, as trustee under a living trust. The complaint named Dr. Bertha Gae Fisher as sole defendant and alleged that Dr. Fisher, 80 years of age, "a spinster residing alone, and [who] has been personally acquainted with officers of the Trustee [Oak Park] for a number of years," executed "a revocable living trust agreement" under date of October 8, 1964, and assigned to plaintiff Oak Park, as trustee, securities of a market value of approximately $180,000. On December 30, 1964, Dr. Fisher delivered to the plaintiff an instrument revoking the trust, and in the middle of March, 1965, "Dr. Fisher verbally withdrew her revocation and informed the Trustee that she wished the trust agreement to remain in full force and effect." On March 19, 1965, Dr. Fisher delivered a further instrument of revocation to plaintiff, and on March 22, 1965, Dr. Fisher "informed the Trustee that she did not desire to revoke the trust." On April 15, 1965, Dr. Fisher "demanded that the trust be revoked."

The complaint further alleges that during the period commencing with the month of December 1964, plaintiff had become aware that Dr. Fisher's memory had failed greatly, and "the Trustee is not certain that her direction that the trust be revoked has been made with the requisite condition in mind as to constitute an act on her part which has binding effect as a matter of law; and

253

the Trustee is likewise uncertain as to her ability to responsibly manage her estate, and is concerned that if it is delivered to her it may be subjected to danger of waste and dissipation." Plaintiff, as trustee, prayed for instructions and "such other and further relief as equity may require."

The trust agreement, made a part of the complaint, directs the distribution of the income to Dr. Fisher during her lifetime, and at her death provides for the distribution of the corpus of the trust estate. After directing that specific amounts totalling $79,000 be paid various relatives, including a brother and a sister, a church and a clergyman, the remainder of the trust estate is to be paid to the West Suburban Hospital of Oak Park.

Summons was served on Dr. Fisher, and an appearance and jury demand were filed by her attorney, John H. Hanson. A motion to dismiss the complaint was set for hearing, and the court appointed Emanuel Morris guardian ad litem. On June 9, 1965, the court held a preliminary hearing and examination of the defendant as to her competency, and at that time appointed Dr. Harry Hoffman to examine defendant. A report of proceedings of the hearing of June 9, 1965, shows that defendant was questioned by the court, Mr. Morris and Dr. Hoffman. The report contains sixteen exhibits submitted by the guardian ad litem, including a letter by Dr. Hoffman, in which he outlines his examination of defendant and his conclusion "that the subject at this time (June 9, 1965) is incapable of handling her affairs."

On July 13, 1965, defendant answered and counterclaimed, asking (1) that the court find the revocation of December 30, 1964, fully terminated the trust, and (2) that her property be returned to her with an accounting.

On July 23, 1965, leave to intervene was granted to a brother, sister, nephew and nieces of Dr. Fisher, and they filed answers to the complaint and counterclaim and their own counterclaim. On the same day, an order was

254

entered granting leave to John H. Hanson to withdraw as attorney for defendant—"the said Dr. Fisher representing in open court that she did not wish John H. Hanson to represent her as attorney herein . . . ."

On July 28, 1965, at the request of the guardian ad litem, the "jury demand, answer and counterclaim filed by John H. Hanson, on behalf of Dr. Bertha Gae Fisher, defendant," were struck from the files. A further order was entered, finding that Dr. Fisher was "mentally incapable of having the care, custody, and management of her property, affairs and estate and does not know her exact bounty and does not know the exact objects of her bounty," and directed Samuel Deutsch, attorney for the intervening members of the family, to proceed with a petition for the appointment of a conservator of the estate of Dr. Fisher.

On August 31, 1965, the guardian ad litem filed a petition which related the proceedings up to that time. It alleged that the counterclaim filed by Samuel Deutsch for the intervenors, the nearest relatives of the defendant, stated that they had been informed that Dr. Fisher, "due to her advanced years, is incapable of managing her estate, and that she was mentally incompetent at the time she executed the revocable trust agreement identified as Trust No. 4731, a copy of which is attached to the original complaint filed herein as Exhibit 'A'; that on January 9, 1965, the said Bertha Gae Fisher executed a last will and testament whereby she bequeathed the residue of her estate to John H. Vierow, the value of which is approximately $70,000, and appointed him as executor thereof; that a copy of said last will and testament is attached hereto marked Exhibit 1 and is made a part of this counterclaim; that they have been informed and believe and upon such information and belief state the fact to be that the said Bertha Gae Fisher did not have testamentary capacity to make a will on said date of January 9, 1965, and that said John H.

Vierow, residuary legatee, exercised undue influence over her in having her make said last will and testament wherein he is the principal beneficiary; . . . ."

The petition further set forth the names of the legatees of the will of January 9, 1965, and the beneficiaries under the trust agreement of October 8, 1964, and a pour-over will dated October 9, 1964, and requested that all of the legatees and beneficiaries named "should be made third-party defendants in this suit" and summonses issued against them. The petition requested that the will of January 9 "be declared null and void and destroyed in open court," and that the court determine whether Dr. Fisher "was mentally competent at the time she executed the trust agreement of October 8, 1964, and the will of October 9, 1964." Subsequently, on August 31, 1965, an order was entered directing that third-party summonses be issued against parties designated, including John H. Vierow.

Third-party defendant, John H. Vierow, appeared and on October 27, 1965, moved to strike parts of the answer and the petition of the guardian ad litem, "in that a Guardian ad Litem may not during the lifetime of his Ward maintain an action to compel one in lawful possession of a purported Will of his Ward to surrender it for cancellation on the ground that it was executed while the Ward was mentally incompetent." Third-party defendant, Vierow, also answered the petition of the guardian ad litem and counterclaimed against the trustee and other third-party defendants, and prayed (1) that the will of January 9, 1965, be not declared null and void; (2) that the court release the will, which had been impounded by the court, to John H. Vierow, the named executor therein; and (3) that the court determine whether Dr. Fisher was mentally incompetent at the time she executed the trust agreement of October 8, 1964, and whether she was mentally competent at the time she revoked the trust agreement.

256

On November 8, 1965, leave was granted to the intervening relatives to withdraw their counterclaim. On the same day, the court entered an order granting leave to the guardian ad litem to withdraw his petition filed on August 31, 1965, but denied "the motions to strike the counterclaim and dismiss John Vierow as defendant," and all parties were ordered to plead to the counterclaim of John Vierow. The answer of plaintiff [Oak Park] to the counterclaim of Vierow contained an affirmative defense that "John H. Vierow has not been named as a party by any pleading presently on file before this Court. . . . The instrument dated January 9, 1965 confers no rights on John H. Vierow and no standing in this litigation." In an order dated November 29, 1965, Dr. Harry R. Hoffman was authorized to further examine Dr. Fisher.

A report of proceedings heard on November 29, 1965, includes the testimony of witnesses for the plaintiff, for the guardian ad litem, and for the third-party defendant, John H. Vierow.

A decree was entered on December 9, 1965, "upon the proofs and exhibits, oral and documentary, taken and filed in this cause, and upon argument of counsel." Its findings show: that the intervenors, the brother, sister, nephew and nieces of Dr. Fisher, were at all times represented by Samuel Deutsch; that the "third-party defendant, John H. Vierow, has been allowed by the Court to participate herein and by order of Court his answer and counter-claim have been allowed to stand as an answer and counter-claim to the Trustee's complaint; that third-party defendant, John H. Vierow, has since being made a party defendant at all times been represented by Fleck & Pollack throughout this proceeding"; that defendant, Bertha Gae Fisher, was competent and had capacity to manage her own affairs on October 8, 1964, and the trust agreement dated October 8, 1964, "between the Oak Park Trust & Savings Bank, as Trustee, and De-

257

fendant Bertha Gae Fisher, . . ." was validly created and executed; that Bertha Gae Fisher was incompetent and unable to manage her own affairs on June 9, 1965, "an existing condition for six months prior to June 9, 1965, or to December 9, 1964," and the defendant was not competent to revoke the trust agreement at any time after December 9, 1964, and "the purported acts of revocation thereafter made were void and of no force and effect because of said defendant's incompetency."

The court decreed that the trust agreement was "in all respects valid and in full force and effect; the Oak Park Trust & Savings Bank, as Trustee be and it hereby is instructed and directed to continue to act as Trustee thereunder and to administer such trust, and to account for and pay the proceeds thereof, pursuant to the terms of said Trust Agreement, to the conservator of the Estate of Bertha Gae Fisher."

The instant appeal from the foregoing decree was filed by the third-party defendant, John H. Vierow, on the theory "that the evidence presented to the trial court did not justify the entry of a decree finding the defendant Bertha Gae Fisher mentally incompetent six months prior to June 9, 1965, that upon the evidence presented the court should have found the defendant Dr. Bertha Gae Fisher mentally competent on December 30, 1964, when she revoked the trust and at all relevant times thereafter; that the revocable living trust should have been ordered revoked and the securities returned to defendant Dr. Bertha Gae Fisher. It is appellant's contention, therefore, the court erred in the entry of a decree clearly and palpably against the manifest weight of the evidence and that the court further erred in allowing the Guardian ad Litem for the defendant Dr. Bertha Gae Fisher to withdraw his Ward's jury demand, answer and counterclaim previously placed on file and entered of record in the Ward's behalf, and in allowing the Guardian

ad Litem to assist in proving plaintiff's case instead of protecting his ward's interests."

■ ■ Considered first is the question of the status of the third-party defendant, John H. Vierow, both in the trial court and in this court. It is elementary that a will is ambulatory and has no effect until the death of a testator. It "has no legal existence, until it is consummated by death." (Stetson v. Stetson, 200 Ill 601, 613, 66 NE 262 (1903).) Therefore, it follows that the petition of the guardian ad litem and the order of court which made the legatees and the executor of the will of January 9, 1965, parties defendant to the instant proceedings, were without legal basis. However, we find no prejudicial error on this point, because of the unusual circumstances presented to the trial court. The record indicates that the active participation by defendant Vierow in these proceedings and in the examination of witnesses has been an added protection to the rights of Dr. Fisher and of assistance to the trial court. Our conclusions as to the propriety of defendant Vierow's status in the trial court apply here.

■ Defendant Vierow charges "the Guardian ad Litem totally failed in his duty to the protection and defense of his Ward's rights and interests as is required by law." Although the record does not demonstrate this charge, the guardian ad litem did withdraw the original counterclaim and jury demand filed by the defendant herself. Defendant Vierow vigorously asserts this was a waiver of the ward's rights and error. (Schrader v. Schrader, 280 Ill App 561, 564 (1935); Kroot v. Liberty Bank of Chicago, 307 Ill App 209, 30 NE2d 92 (1940).) If this may be conceded, arguendo, the court's action in affirmatively permitting defendant Vierow's answer and counterclaim to stand and allowing him to participate in all the proceedings, effectively offset any prejudice to Dr. Fisher that might have resulted from the

259

actions of the guardian ad litem. The record reflects that no jury demand was made by defendant Vierow and that he did not object in the trial court to the withdrawal of the jury demand. While, as asserted by defendant Vierow, it might have been better practice in this case to submit the issue of competency to a jury, the trial court had the jurisdiction to hear and determine the question without a jury. (Cowdery v. Northern Trust Co., 321 Ill App 243, 53 NE2d 43 (1944) ; see, also, § 117, Administration of Estates, Ill Rev Stats, c 3.) We conclude that in this case it was within the sound discretion of the court to proceed with the trial of the issue of incompetency without a jury.

■ We consider next the contention that "the decree is clearly and palpably against the manifest weight of the evidence." As asserted by defendant Vierow, the general rule of law is that a court of review "will not disturb the findings of fact of the chancellor who heard and saw the witnesses unless such findings are manifestly against the evidence," but if they are, it becomes the duty of the reviewing court to set aside such findings. Shlensky v. Shlensky, 369 Ill 179, 182, 15 NE2d 694 (1938).

In sum, the testimony offered by two of plaintiff's officers indicated some indecision and slight confusion on the part of Dr. Fisher during the six-month period prior to June 9, 1965. The third-party defendant offered three witnesses who, on the basis of their contact with Dr. Fisher, testified that they thought her to be competent during this period. The guardian ad litem offered the testimony of Dr. Hoffman, who had initially been appointed by the court to examine Dr. Fisher. Dr. Hoffman testified that he was a physician licensed in the State of Illinois since 1910. His specialty was nervous and mental diseases, and he had been an associate clinical professor of psychiatry. He saw Dr. Fisher on June 9, 1965, and conducted a 2-hour examination. He conducted another 2-hour examination on November 20, 1965. "I

made a diagnosis as of November 20, 1965. I made a diagnosis of cerebral arteriosclerosis; . . . . It's a chronic affair. She was not competent to handle her own affairs on June 9, 1965. My opinion is based on the disorientation. By that I mean disorientation for time, place and person. She did not know her counsel in the room, she did not know where she was; she did not know how she came down to the building where she was, this building. She did not know her bounty. . . . On [November 22, 1965] my opinion is that she was unable to handle her affairs. . . . She did not know the date, the day of the year. That was November 20, 1965."

Over objection, the witness was permitted to answer a question as to his opinion, "based upon a reasonable degree of medical certainty as to whether Doctor Bertha Gae Fisher was incompetent and incapable of handling her own affairs for six months prior to June 9, 1965." The answer given was, "I base my opinion that I'm going to give, upon my experience in handling, treating individuals, from the literature and teaching, I should say that this disorder, cerebral arteriosclerosis, existed to such an extent that she was incompetent at least six months prior to June 9, 1965."

After extended and detailed cross-examination by counsel for defendant Vierow, the witness stated, "I think she was incompetent for at least six months prior to June the 9th, 1965."

Defendant Vierow, contending that the findings of the trial court that Dr. Fisher was mentally incompetent six months prior to June 9, 1965, and thereafter, was clearly and palpably against the manifest weight of the evidence, argues, "The total sum and effect of all the testimony and evidence in the entire record overwhelmingly and preponderantly establishes that Dr. Fisher was mentally competent on October 8, 1964, when she executed the trust, was mentally competent on December 30, 1964, when she revoked the trust, and was mentally competent

at all relevant times thereafter. . . . All of the witnesses, with the exception of Dr. Hoffman, had direct personal contact with Dr. Fisher, and had the opportunity to observe her daily conduct and handling of her business affairs. Their opinions were based on overt actions. . . . Dr. Hoffman, in our judgment, gave a pure guess and conjecture, and not an opinion. In any event, his opinion was in direct conflict with all the witnesses who testified and had direct personal contact with Dr. Fisher, and had the opportunity to observe Dr. Fisher handling her business affairs."

Defendant Vierow argues, "The Courts of this State have continually refused to give greater weight to the testimony of a physician, even though an expert, as to the mental capacity of an individual than to the testimony of laymen. The rule of law in this regard is clearly and firmly established in Illinois. Yet the Court in the case at bar decreed contrary to the rule of law. The Court accepted fully and completely the testimony of Dr. Hoffman alone, and gave greater weight to it, than the testimony of all the laymen witnesses." Cases cited include Wharton v. Meyers, 371 Ill 546, 21 NE2d 772 (1939), where it is said (p 552):

> "Physicians are better qualified to testify as to a diseased condition than are lay witnesses, but the testimony of physicians upon the subject of mental capacity is entitled to no greater weight than that of laymen of good common sense and good judgment. Sharkey v. Sisson, 310 Ill 98."

■ Plaintiff contends that the decree was amply supported by the evidence and should not be disturbed. The standard to be applied is set forth in Wharton v. Meyers, 371 Ill 546, 21 NE2d 772 (1939), where the court said (p 555):

> "The chancellor saw the witnesses, and heard their testimony. He had a better opportunity to judge

their credibility than has this court. Where a case is heard by the chancellor and the evidence is all, or partly, oral, it must appear that the decree is against the manifest weight of the evidence or that there is clear and palpable error before a reversal will be had. (Dowie v. Driscoll, 203 Ill 480; Biggerstaff v. Biggerstaff, 180 id. 407."

The plaintiff argues that it "presented no evidence on the question of competency of Dr. Fisher except to introduce through the testimony of Mrs. Gladys Finkle and Mr. Ellis H. Denney, officers of the Trustee, the series of revocations, affirmances, re-revocations and re-affirmances that prompted the Trustee to seek the instructions of the Court. The Trustee's only purpose in so doing was to establish that a reasonable doubt existed justifying judicial instructions as to Dr. Fisher's true wishes concerning the continuation of the Trust and whether Dr. Fisher was competent to determine responsibly if her Trust was to continue. The Trustee introduced no further evidence on the question of competency but in its pleadings, throughout the pre-trial proceedings and the trial, took the position that it was ready, willing and able to comply with whatever determination the Court made concerning the competency of Dr. Fisher and, if competent, what her true wishes were concerning the revocation of the Trust. . . . The Trustee believes that it is entitled to comment upon that evidence and argue in favor of the findings of the Trial Court which it believes is manifestly supported by the credible evidence presented in the Trial Court. The Trustee believes the only credible evidence on Dr. Fisher's competency at the time of the purported revocation is the testimony of Dr. Harry Hoffman."

The plaintiff further argues, ". . . it was the Trustee, after the mystifying changes in Dr. Fisher's attitude over a relatively short period of time, who thought it necessary to raise the question of Dr. Fisher's compe-

263

tency by a suit for instructions in the Circuit Court of Cook County. . . . we submit that the trial court was eminently correct in apparently ruling that Dr. Hoffman's testimony was the *only credible* evidence on the question of Dr. Fisher's competency on or about December 30, 1964 and thereafter." The plaintiff further asserts "that the Guardian ad Litem made a full and careful investigation into Dr. Fisher's situation; determined what pleadings and defenses her interest demanded and protected her interest in a manner that was a credit to the office of Guardian ad Litem."

The intervening relatives state they "became intervenors by leave of court for the purpose of protecting and conserving the estate of defendant. . . . The Chancellor held a full hearing, lasting several days. The only competent medical testimony adduced at the hearing was by Dr. Harry R. Hoffman who gave his opinion that the defendant was incompetent on June 9, 1965, and based upon a reasonable degree of medical certainty, she was incompetent for six months prior thereto. No contradictory medical testimony was presented or offered. . . . These appellees, the intervenors who are the closest relatives of the defendant and the natural objects of her bounty and certainly most anxious to protect and preserve her estate, are of the considered opinion that the Guardian ad Litem performed his duties admirably well. The record does not show that any one, including the appellant, found any fault with his actions or the manner in which he performed his duties."

The guardian ad litem contends that the evidence was sufficient to establish that the incompetency of Dr. Fisher and her inability to manage her own affairs had existed for six months prior to June 9, 1965, or December 9, 1964, and the decree is fully justified by the evidence in the record presented to the court, and it "is not clearly and palpably against the manifest weight of the evi-

264

dence. . . . The conflict in the testimony as to the competency of Dr. Fisher, only presents an issue of credibility of the witnesses testifying in regard thereto and the court's resolution of that issue is not grounds for reversal in this court, and the reviewing court will not substitute its judgment for that of the trier of facts." The guardian ad litem asserts that his "actions at all times were under the direction, supervision and orders of the trial court and denies that he was remiss in any of his duties or failed to protect the rights and interests of Dr. Fisher at all times or waived any of her rights."

■ ■ After a review of this entire record, the testimony of the witnesses, including that of Dr. Hoffman, and the exhibits, which include the series of trust revocations, affirmances, re-revocations and reaffirmances by Dr. Fisher, we conclude that this record does not show that the decree here is contrary to the manifest weight of the evidence. The trial court saw and heard all witnesses offered and examined Dr. Fisher; it was in a better position to determine the question of the duration of the incompetency of Dr. Fisher than a reviewing court. The testimony of Dr. Hoffman included a diagnosis of "cerebral arteriosclerosis . . . hardening of the arteries of the brain. It's a chronic affair." It was his professional opinion that this disorder existed to such an extent that she was incompetent at least six months prior to June 9, 1965. Although it is difficult to pinpoint the time such a disorder may render a person incompetent and incapable of managing his or her estate, the opinion of an experienced psychiatrist as to the length of time such a disorder had existed with "a reasonable degree of medical certainty," and not contradicted by medical testimony, is evidence entitled to due weight and consideration by the trier of the fact.

As we are not convinced that the findings here are against the manifest weight of the evidence, or that

there has been palpable error committed, the trial court's decree must be affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.